SAMUEL J. HOFFMAN, Plaintiff-Appellee, *v.* JULIAN B. WILKINS *et al.,* Defendants-Appellants—(COOK COUNTY CIVIL SERVICE COMMISSION, Third Party Defendant-Appellee.)

(No. 55065;

First District—April 18, 1971.

812

Winston, Strawn, Smith & Patterson, of Chicago, (Calvin Sawyier and Edward J. Wendrow, of counsel,) for appellants.

Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago, (Thomas R. Mulroy, George Kelm, and Thomas C. Shields, of counsel,) for appellee.

Edward V. Hanrahan, State's Attorney, of Chicago, (Daniel P. Coman, Vincent Bentivenga, and James A. Rooney, Assistant State's Attorneys, of counsel,) for third party defendant-appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This appeal is from a preliminary injunction enjoining the Governing Commission of the Cook County Hospitals from dismissing plaintiff, Dr. Samuel J. Hoffman, from his position as Director of Laboratories for Cook County Hospital.

Dr. Hoffman has been employed at the Cook County Hospital since 1926 and has been the Director of Laboratories since December 1, 1945. After examination, Dr. Hoffman was certified to that position in 1958 by the Civil Service Commission of Cook County. From 1959 to 1966, he also carried Civil Service certification as "attending Physician-Pediatrics." Additionally, Dr. Hoffman is Executive Director of the Hektoen Institute, an independent non-profit corporation which shares facilities with the Department of Laboratories and does medical research in conjunction with Cook County Hospital.

In 1969, the legislature established the Comprehensive Cook County Hospitals, Health and Allied Medical Programs Governing Commission of Cook County to replace the Board of Commissioners of Cook County as manager of the county hospital facilities. (Ill. Rev. Stat. 1969, ch. 34, pars. 5011, et seq.) This charge was apparently made in response to the finding of the National Joint Committee on the Accreditation of Hospitals to the effect that independent management of the county hospitals was necessary for their future accreditation. The defendants in this case are the members of the Governing Commission.

The administrative structure of Cook County Hospital consists of nine

medical divisions, one of which is the Division of Laboratory Services. Six of the divisions are departmentalized, the Division of Laboratory Services, for example, having five departments. Sometime prior to March 17, 1970, the Superintendent of Cook County Hospital requested Dr. Hoffman's resignation, and Dr. Hoffman declined to resign. On March 17, 1970, the Governing Commission considered the matter and referred it to the Executive Committee of the Medical Staff which is composed of certain administrative personnel and the heads of the divisions and departments of the hospital. This executive committee adopted a resolution that the head of the Division of Laboratories and the Director of the Hektoen Institute should not be the same person.

On March 24, 1970, the Governing Commission considered this resolution and voted to terminate Dr. Hoffman's services as the Director of Laboratories. On March 28, Julian Wilkins, chairman of the Commission, sent a letter to Dr. Hoffman notifying him that the Commission had decided to terminate his services as of March 31, 1970. The letter did not state any reasons for the decision. This action did, however, generate a number of newspaper articles which reported that Dr. Hoffman was being dismissed as a result of conflict of interest charges.

Dr. Hoffman transmitted the letter to the Civil Service Commission of Cook County, which, on April 1, 1970, informed the Governing Commission that, due to Dr. Hoffman's civil service status, he could not be dismissed unless written charges were presented to the Civil Service Commission and a hearing were held pursuant to Ill. Rev. Stat. 1969, ch. 34, par. 1118. The Civil Service Commission also ordered the Governing Commission to show cause why the alleged order of dismissal should not be rescinded and vacated at a hearing to be held on April 8, 1970. The Governing Commission took the position that it had independent statutory power to dismiss Dr. Hoffman under Ill. Rev. Stat. 1969, ch. 34, pars. 5011, et seq. (This point will be considered later in this opinion.) After the hearing on the rule to show cause, the Civil Service Commission entered the following order directed to the Governing Commission on April 9:

"That inasmuch as Dr. Samuel J. Hoffman, as appears from the records of the Commission, had been duly examined and appointed in the Classified Service as Director of Laboratories, at Cook County Hospital, he can only be discharged from such employment pursuant to Illinois Revised Statute, Chapter 34, Section 1118, by the filing of written charges and a hearing before the Civil Service Commission, at which time the respondent shall be afforded the right and opportunity to defend any such charges, and its final determination by the Commission as to his retention or dismissal in said Classified Service, and

therefore your letter of March 28, 1970, dismissing Dr. Hoffman from his position as Director of Laboratories, not being in conformity with the aforesaid Statute, is hereby vacated and set aside."

Thereafter, on April 14, Mr. Wilkins, in behalf of the Governing Commission, informed the Civil Service Commission that he had been denied access to the Civil Service files on which the order was based and was therefore taking "steps to implement the prior decision of the Governing Commission." He thereupon sent a letter to Dr. Hoffman which stated in part:

"Please arrange to have your personal effects removed from your former office as the Director, Division of Laboratories * * *. I am instructing the staff to clear this office on Thursday morning, April 16, 1970, and your cooperation would be appreciated."

The Civil Service Commission responded, on April 15, with an offer to allow Mr. Wilkins to examine Dr. Hoffman's Civil Service file at the Civil Service Commission offices. Mr. Wilkins replied with a request that the files be sent to his office, but on April 17 the Civil Service Commission explained that, in keeping with its normal policy, personnel records were available for inspection only at its offices, and reiterated its invitation to Mr. Wilkins to come to the Civil Service Commission's offices and inspect the file at his convenience.

The plaintiff then filed this suit and moved for a preliminary injunction, asking that the defendants be restrained from interfering with his right to remain as Director of the Division of Laboratory Services at Cook County Hospital unless removed for cause by the Civil Service Commission upon written charges and after a hearing as prescribed by statute. The defendants answered and filed a counterclaim and third party complaint against the Cook County Civil Service Commission. After hearing testimony and arguments of counsel, the chancellor granted plaintiff's motion and entered the preliminary injunction from which defendants have taken this appeal.

At the hearing, plaintiff presented, as witnesses on his behalf, two doctors who qualified as experts in medical laboratory science. Dr. Morris Fishbein, chaiman of the Hektoen Institute, testified that he had been professionally acquainted with Dr. Hoffman for approximately forty years and considered him to be "an excellent representative of the medical profession and in all of the positions he occupies." He said he had received inquiries from five or six people to ask what Dr. Hoffman had done that caused his instant dismissal, and was compelled to answer that he did not know. While he thought it difficult to assess the damage done to Dr. Hoffman's reputation, he felt that any "sudden, abrupt dismissal of anybody from any kind of a position, without an explanation as to the

reasons therefor, is bound to reflect in the public mind some doubts as to his ability." In answering a question concerning the effect which the attempted discharge of Dr. Hoffman would have on laboratory services, he stated: "assuming that the direction of the laboratories should change, and assuming that as a result of that, confusion would arise and the question of authority to order and to return information on tests were to be questioned, this would inevitably revert to delay, certainly, if not perhaps questions of competency in the administration of laboratory services." He also testified that it was advantageous to have the laboratories' research and service functions combined as they were at Cook County Hospital with the association of the Hektoen Institute and the hospital's Division of Laboratory Services.

Dr. Paul Szanto testified that he was the head of the Department of Pathology at Cook County Hospital working under Dr. Hoffman, whom he has known since 1956 as a competent and "excellent Director of Laboratories." He considered the association of the Division of Laboratory Services with the Hektoen Institute research functions necessary for a modern hospital laboratory. He testified that the letter purporting to dismiss Dr. Hoffman was "very detrimental to the morale of the Laboratory Division." In his opinion, the discipline of the laboratory division was undermined because the staff was left with uncertainties in respect to who was heading the division and in every other respect. He also thought that Dr. Hoffman's purported discharge was "absolutely detrimental to his reputation."

Mr. Wilkins, Chairman of the Governing Commission, testified in behalf of the defendants that he had been present at the Civil Service Commission hearing on the rule to show cause why the Governing Commission's dismissal of Dr. Hoffman should not be set aside, but had been refused access to the Civil Service records up to that time. He said that the Governing Commission had not stated to anyone any reason for Dr. Hoffman's discharge. In his judgment, an injunction allowing Dr. Hoffman to remain in his position would harm "the administration of the hospital and the integrity of the Commission to manage the policy-making functions of the hospital, and might make a nullity of the statutory responsibility that such management is supposed to be realistic." He also felt that the hospital's future accreditation was in danger if the Governing Commission could not control supervisory personnel. He further testified that the retention of Dr. Hoffman would impair the relationship between the Division of Laboratories and other medical divisions. Finally, he thought that an independent head of the Division of Laboratories was needed for the Governing Commission to negotiate with the Hektoen Institute concerning its relation to the hospital.

■■■ The basic issue before us is whether or not the Circuit Court abused its discretion in granting the preliminary injunction. (*Seay & Thomas, Inc. v. Kerr's, Inc.*, 58 Ill.App.2d 391, 399-400.) Defendants' first argument is that a court of equity has no jurisdiction to enjoin the discharge of a public officer notwithstanding he may have civil service status, and they urge that on procedural grounds alone the preliminary injunction be set aside. As authority for this proposition, defendants cite numerous cases which we have divided into three groups. The first group relates to the means of challenging a public official's right to office—the exact opposite of the purpose in filing the instant complaint. The courts held that *quo warranto*, rather than injunction, was the proper proceeding by which to question that right of a person to take or hold office. (See *Zeigler v. Heyl*, 334 Ill.App. 299, 301; *Bloome v. Juergensmeyer*, 344 Ill.App. 625, 629.) It seems to us, however, that the very nature of *quo warranto* makes it inapplicable to litigation calculated to prevent dismissal or to retain in office.

Defendants cite the second group of cases for the proposition that civil service positions, being in the nature of public offices, do not give the employees property rights in those positions. (See *Butts v. Civil Service Com. of City of Aurora*, 108 Ill.App.2d 258, 263; *People ex rel. Baker v. Wilson*, 39 Ill.App.2d 443, 446; *People ex rel. Carter v. Hurley*, 4 Ill.App.2d 24, 27; *People ex rel. Reilly v. City of Chicago*, 337 Ill. 100, 104.) In each of the foregoing cases, the parties to the action were a complaining employee and the civil service commission, after the commission had made a decision adverse to the status of the employee, a situation which does not exist in the instant case. Thus, the attention of the court in those cases was addressed to the question as to what remedy might be available to an employee to compel the setting aside of an action of the civil service commission. The point made in this group of cases does not control the question presented in the instant case, which concerns, rather, the remedy available to an employee against his employer, the Governing Commission, which is alleged to have dismissed the employee in contravention of civil service law and contrary to the position taken by the Civil Service Commission.

■■ *Marshall v. Illinois State Reformatory*, 201 Ill. 9, 14—16, and the cases cited therein, constitute the third group of cases supporting defendants' argument that equity has no jurisdiction over the appointment and removal of public officers. In the *Marshall* case, the plaintiff sought to enjoin the managing board of the Illinois State Reformatory from dismissing him from his position as the physician of the reformatory on the grounds that the charges filed against him were not made in good faith. The court held that title to a public office could not be determined by

a court of chancery, the proper remedy being at law, and affirmed dismissal of the suit for injunction. The court in the *Marshall* case relied in part on *Ex parte Sawyer*, 124 U.S. 200, which stated that a writ of prohibition would be a proper remedy at law to determine the right to a public office. A writ of prohibition is a specific form of injunction which, prior to the merger of law and equity and the abolition of the old forms of pleading, was an injunctive remedy available to a law court. We find, however, that the distinctions between remedies drawn by the courts in those early cases are no longer authority for defendants' argument in relation to modern civil practice and the current judicial system. If, in the process of this evolution, the holding in the *Marshall* case has not been divested of its force, it has been implicitly overruled by the more recent case of *People ex rel. Hurley v. Graber*, 405 Ill. 331, 351. In the *Graber* case, the plaintiffs obtained an order against the Civil Service Commission enjoining it from demoting them, on the grounds that such action was beyond the commission's statutory authority. The Supreme Court agreed, and, while it did not specifically mention the *Marshall* case, · which may indicate only that the rule in *Marshall* was not thought relevant at that late date, it did specifically hold that the plaintiffs had presented facts which:

"* * * afford an adequate basis for the interposition of a court of equity to protect the plaintiffs in their legal rights resultant from their certification and promotion to the promotional positions they then occupied. The two writs of injunction issued by Judge Harrington did not interfere with or preclude the commission or the appointing officers from removing the plaintiffs, pursuant to section 12 of the City Civil Service Act. The orders assailed were limited to preventing demotions which would operate as a removal or discharge of plaintiffs from the classified service."

The use of the injunctive remedy in situations similar to the instant case has also been recognized and found appropriate in other jurisdictions. (See *Day v. Andrews*, 188 S.2d 523, 526; *McDonald v. Brooks*, 387 S.W.2d 803, 806-07; *Zirin v. McGinnes*, 282 F.2d 113, 115, *cert. denied* 364 U.S. 921.) We find, therefore, that, on procedural grounds, the granting of the injunction was neither improper nor extra-jurisdictional.

■■ Defendants' second argument is that plaintiff did not prove the factors necessary for the granting of a preliminary injunction in that he failed to prove (1) that he would suffer immediate and irreparable injury, (2) that the need for the granting of the injunction outweighs the possible injury to the defendants, and (3) that he will probably be entitled to ultimate relief; citing *Professional Business Management v. Clark*, 83 Ill.App.2d 236, 241; *Centennial Laundry Co. v. West Side*

*Organization,* 34 Ill.2d 257, 262. In examining each of these three contentions, we must bear in mind that large discretionary power is vested in the trial court in the granting of a preliminary injunction for the purpose of preserving the *status quo* between the parties until the cause can be fully heard on its merits, and that only a showing that the trial court abused that discretion, would justify our setting aside such an order. *Seay & Thomas, Inc. v. Kerr's, Inc., supra,* 399-400.

■■ As to the first of these contentions, we think that the trial court was presented with sufficient evidence to demonstrate that plaintiff would be immediately and irreparably injured by his summary dismissal. Two witnesses testified that his reputation had been injured, that his attempted dismissal had caused uncertainty among the staff of the Division of Laboratories as to his authority to head the division, and that his summary dismissal could impair the proper functioning of the Division of Laboratories. In addition, he would suffer the loss of his salary, which, in itself, and logically so in our opinion, was recognized as an element of injury in *People ex rel. Hurley v. Graber, supra,* 351.

■■ Secondly, we think that defendants did not show that the preliminary injunction would cause injury to the hospital. Mr. Wilkins' testimony in behalf of the Governing Commission was essentially that the injunction would limit the powers of the Governing Commission over supervisory personnel and thus impair its integrity to manage the hospitals. The purpose of the preliminary injunction, however, is only to limit the Governing Commission's power in this respect until such time as its powers are determined when the case is decided on its merits. Defendant's evidence did not successfully show that plaintiff's retention, for the time being, in a position he had held for almost 25 years, would imperil the County Hospital's accreditation. Further as to this point, defendants offered no reasons of substance as to why a completely independent Director of Laboratories was essential to "negotiate" with the Hektoen Institute, particularly in view of the temporary nature of a preliminary injunction.

❸ 9-11 Defendants' final argument in this regard is that plaintiff has not shown that he will probably be entitled to ultimate relief. While this requirement has frequently been stated by the courts, there are exceptions to it, and we do not find it applicable to this case. One recognized exception has been in cases involving property which may be destroyed if not preserved by court order, and an injunction is then proper even though the court may have serious doubt concerning the plaintiff's ultimate success. (*Seay & Thomas, Inc. v. Kerr's, Inc., supra,* 402-403.) A similar exception is applicable where, as in the instant case, the injunction is for

the purpose of maintaining the *status quo*. In *Fishwick v. Lewis,* 258 Ill.App. 402, 410, the court said:

"Where the sole object for which the temporary injunction is sought is the preservation of a fund in controversy *or the maintenance of the status quo until the question of the right between the parties can be decided on final hearing, the injunction is properly allowed or maintained even where there may be a serious doubt as to the ultimate success of the complaint.*" (Underlining supplied.)

See also *Weingart v. Weingart,* 23 Ill.App.2d 154, 158-159; *Northern Ill. Coal Corp. v. Langmeyer,* 340 Ill.App. 423, 431-432; *Miollis v. Schneider,* 77 Ill.App.2d 420, 425-426; and *Keeshin v. Schultz,* 128 Ill.App.2d 460, 468-69 (and cases cited therein).

Both parties, however, have briefed us extensively on points relating to the ultimate issue as to whether the Governing Commission has the statutory authority to discharge plaintiff without a showing of cause under civil service procedures. Defendants have asked us to resolve this issue in the affirmative, while plaintiff requests a finding that he enjoys civil service status and is entitled to the procedural protection inherent therein. We are therefore constrained to determine this issue, particularly since neither side has indicated the need for further evidence, and only questions of statutory construction would remain for decision of the trial court on remand.

Although, as indicated, we believe that plaintiff was not required to establish that he would probably be entitled to ultimate relief in order to justify issuance of the preliminary injunction, we find that he has shown that he does have civil service status, and is therefore entitled to the ultimate relief prayed for.

■■■ Defendants argue that plaintiff was not protected by civil service in his position as Director of Laboratories because after his certification to that position, he accepted certification as "Attending Physician-Pediatrics," which automatically severed him from civil service status in his prior position. They call our attention to Rule VI, § 3, par. 6 of the Rules of the Civil Service Commission of Cook County, which provides:

"An employee who accepts certification to another position in the classified service shall, during the period of probation in such other position, automatically be on leave of absence from his former position. Upon the expiration of the probation period, such employee shall be permanently separated from the position formerly held by him and shall forfeit seniority therein."

In their brief, defendants concede "that the second classification held by plaintiff was not a paid position," and "seems to have been more a

matter of form than of any substance." The Civil Service Commission had before it the information concerning plaintiff's classification as "Attending Physician-Pediatrics," and, by its order, necessarily agreed with defendants' characterization of this second certificate, finding that Rule VI did not apply to plaintiff so as to deprive him of civil service protection as Director of Laboratories. We agree, and hold that the Commission has the power, in any event, to construe its own rules to avoid absurd or unfair results. See *Sun Oil Co. v. Federal Power Commission*, 256 F.2d 233, 239, where, in responding to a similar point, the court said, "an administrative agency is not a slave of its rules. [Citation.] *Ad hoc* changes may be made and, in proper cases, may be applied retroactively."

Passing to the point mentioned earlier, the Governing Commission contends that it has independent statutory authority to dismiss Dr. Hoffman under Ill. Rev. Stat. 1969, ch. 34, pars. 5011, *et seq.*, particularly under section 5021, which it contends leaves Dr. Hoffman without civil service protection. That section reads:

"The Commission may appoint such chief administrative officers as it determines are necessary who shall serve at the pleasure of the Commission for the Hospitals which are operated by such county. In addition the Commission shall appoint such administrators, medical directors and other executive and administrative employees as it determines are necessary."

The Governing Commission's position, stated in the alternative, is that plaintiff is a "chief administrative officer" who serves at the pleasure of the Commission under the first sentence quoted above, or, if not, then he is a medical director, or executive or administrative employee under the second sentence with respect to whom the power to appoint implies the power to remove.

■■ We cannot agree with the contention that plaintiff is a chief administrative officer within the meaning of the statute. The very wording of the two sentences of the section itself creates a distinction between "chief administrative officers," who serve at the pleasure of the Commission, and "administrators, medical directors, and other executive and administrative employees." Cook County currently operates three hospital facilities, and, in our opinion, the statutory provision in regard to a chief administrative officer refers to such a person as may be appointed superintendent of one of the hospitals. The power to appoint these officers was formerly vested in the President of the Board of Commissioners of Cook County and they were not covered by the civil service act for Cook County. (Ill. Rev. Stat. 1969, ch. 34, par. 1116.) All personnel below the superintendent, with the sole exception of the purchasing

agent, were also appointed by the President of the County Board, but had civil service status. (Ill. Rev. Stat. 1969, ch. 34, pars. 1101, 1116.) Defendants' position is that the transfer of authority to the Governing Commission included a broadening of that governing body's authority over appointments. If, in transferring these powers of appointment, the legislature had intended to make so substantial a change in their nature as defendants now urge, we believe that the language of the act would have clearly indicated the intent to remove from civil service all positions below superintendent. In the absence of such an explicit declaration of intent, we cannot read so important a change into the Governing Commission Act of 1969.

■■ For much the same reason, we think that the authority of the Governing Commission to appoint subordinate administrators, medical directors and other executives cannot be read to imply the right of removal without following civil service procedures. Again, the legislature could easily and consistently have stated that these personnel would serve at the pleasure of the Commission (as was done with the chief administrative officers referred to in the first sentence), if this had been the intention.

We consider that our interpretation of this statute is supported by amendments to the County Hospitals Governing Commission Act effective July 1, 1970, even though we recognize that, by reason of their later date, they do not control our decision in this case. These amendments broaden the powers of the Governing Commission over the appointment and dismissal of supervisory personnel and provide a merit system for all other employees. (Ill. Rev. Stat. 1970 Supp., ch. 34, pars. 5021, 5026.) Although the amendments have specifically removed employees, generally, from civil service coverage, plaintiff, having been certified as Director of Laboratories in 1958, would be protected in that position by a new section of the act which reads in part:

"* * * any person holding an appointment as a Medical Director under Section 11 of this Act (§ 5021) at the time this amendatory Act of 1970 goes into effect and who has held civil service status in that position for longer than 10 years shall be protected in that position under the merit system established in this Act." Ill. Rev. Stat. 1970 Supp., ch. 34, § 5026.

Defendants made an offer of proof (which was denied), that, at the level of Medical Director, only two people, one of whom was plaintiff, claimed civil service certification. But from the testimony of Mr. Wilkins for the defense, we find that the other Medical Director had not held such certification for the statutory requisite of 10 years. Thus, if, as defendants contend, plaintiff does not enjoy civil service status, then the statute last

above quoted was enacted in the abstract, since it would apply to nobody.

Our conclusion is that the court did not abuse its discretion in entering the order appealed from. It is therefore affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed and remanded with directions.

STAMOS, P. J., and DRUCKER, J., concur.