560 F.2d 1337
 Quentin D. YOUNG, Plaintiff-Appellee,
v.
Edwin L. BRASHEARS, Jr., Individually and as Chairman of the
Health and Hospitals Governing Commission of Cook County,
and Charles A. Davis, Mrs. W. Miles Burns, John W. B.
Hadley, Ellsworth E. Hasbrouck, Richard Kessler, and George
Hill, Individually and as members of said Commission and
James G. Haughton, Individually and as Executive Director of
said Commission, Defendants- Appellants.
 No. 76-1749.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 18, 1977.
Decided Aug. 23, 1977.
 
 William P. Tuggle, Chicago, Ill., for defendants-appellants.
 Richard F. Watt, Chicago, Ill., for plaintiff-appellee.
 Before BAUER and WOOD, Circuit Judges, and FOREMAN, District Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Following a strike by interns and residents at the Cook County Hospital in Chicago, Illinois, plaintiff was terminated from his position as Clinical Director of the Department of Medicine. Plaintiff was notified of his termination in a letter from defendant Haughton, Executive Director of the Health and Hospitals Governing Commission of Cook County, who advised plaintiff that his termination was effective immediately and directed him to vacate his office by 5:00 p. m. that day. The letter did not state any reasons for plaintiff's termination, nor did it refer to a hearing of any kind. In a memorandum transmitted by plaintiff to defendant Haughton shortly after receipt of the termination letter, plaintiff challenged the right of the Commission to terminate his employment without a specification of charges, and a due process hearing. Plaintiff further advised defendant Haughton of his intention to remain on duty until he was provided with such procedures.
 
 
 2
 Approximately two weeks after receipt of the termination notice, plaintiff filed this lawsuit under 42 U.S.C. § 1983 seeking to enjoin defendants from terminating him, interfering with the performance of his duties, or refusing to pay him until he was provided a full and fair hearing. Following the testimony of witnesses and arguments by counsel, the district court determined that in his position as Clinical Director plaintiff possessed a property interest which entitled him to a hearing in conformity with the Due Process Clause of the Fourteenth Amendment.[1] The court then entered a temporary restraining order and ordered the parties to submit to the court written suggestions as to what type of hearing plaintiff should be afforded. On the basis of these suggestions the court fashioned a set of procedures which it directed the parties to follow, and retained jurisdiction over the cause for the purpose of enforcing its orders, for the purpose of review should any party seek it, and "to ensure that the constitutional rights of the parties have been fully observed and protected." The issue to be decided was defined by the court as "whether the charges brought against the plaintiff, Dr. Young, by the defendant, Health and Hospitals Governing Commission, are shown to be substantiated and whether they provide sufficient cause for the discipline sought to be invoked against him."
 
 
 3
 Consistent with the court's order, the parties proceeded in the following manner. Defendants notified plaintiff of the specific charges against him and of the discipline sought to be invoked if the charges were proven.[2] A three-member[3] panel was established to hear evidence, determine findings of fact with respect to whether the charges were substantiated, and prepare conclusions of law as to whether those charges found to be substantiated provided sufficient cause to terminate plaintiff.[4] The panel's findings of fact were made binding on the Commission but its conclusions of law regarding the discipline were not.[5] At the conclusion of the hearing the panel transmitted to the Commission its written findings of fact and conclusions of law. The panel found plaintiff guilty of four and one-half of the six charges against him, and recommended that the Commission discipline plaintiff by reprimand and suspension for 30 days without pay.[6]
 
 
 4
 The Commission, after hearing oral argument by both sides, rejected the recommendation of the panel and voted to terminate plaintiff from his position. A resolution terminating plaintiff and stating the reasons therefor was submitted to the court as required by its order.
 
 
 5
 Immediately thereafter, plaintiff petitioned the court to review the Commission's resolution and to grant permanent injunctive relief prohibiting defendants from terminating him from his position as Clinical Director of the Department of Medicine. The district court, after extensive consideration of the panel's findings of fact and the Commission's resolution, concluded that the reasons provided by the Commission for terminating plaintiff were not supported by the record and were therefore arbitrary and capricious.[7] The court further concluded on the basis of the Commission's departure from the record and usurpation of the fact finding function of the panel, that it was unable to find the Commission sufficiently impartial under the requirements of the Due Process Clause. Observing that federal court is not the proper entity to run a hospital and expressing dissatisfaction with assuming the task of determining the proper sanctions against plaintiff, the court adopted the recommendations of the panel's report which it found to be the thorough and thoughtful work of two prominent lawyers who had no previous contact with the controversy. Accordingly the court granted plaintiff permanent injunctive relief with the exception of reprimand and suspension for thirty days. From this order defendants appeal.
 
 
 6
 The following two questions are before us for review: 1) whether the district court erred in concluding that under the law of the state of Illinois plaintiff possessed a property interest in his position as Clinical Director of the Department of Medicine; and 2) whether the district court erred in its determination that the Commission's decision to terminate plaintiff as represented by the Commission's statement of reasons was not supported by the record and was therefore arbitrary and capricious.[8]
 
 I. PLAINTIFF'S PROPERTY INTEREST
 
 7
 Relying upon the development of relevant Illinois statutes and the only Illinois case concerning the termination of a medical director at Cook County Hospital, Hoffman v. Wilkins, 132 Ill.App.2d 810, 270 N.E.2d 594 (1971), the district court concluded that plaintiff possessed a property interest in his position as Clinical Director and was thereby protected from termination without due process. Neither plaintiff nor defendants challenge the district court's reference to Illinois law in deciding the sufficiency of plaintiff's claim of entitlement to his employment.[9] Defendants do challenge, however, the court's conclusion that plaintiff possesses a property right in his employment. Because the decision below turns on the court's interpretation of various enactments and deletions by the Illinois legislature, and the thrust of defendants' argument similarly involves interpretation of these same legislative actions, it is necessary to summarize the development of the statutes dealing with the hiring and firing of Cook County Hospital employees such as plaintiff.
 
 
 8
 In what the Hoffman court recognized as an effort to secure future accreditation by the National Joint Committee on the Accreditation of Hospitals, the Illinois legislature in 1969 transferred management responsibility for the Cook County Hospital facilities from the County Board of Commissioners to the newly established Governing Commission. Hoffman, supra, 132 Ill.App.2d at 812, 270 N.E.2d at 602. At the same time the legislature commenced a series of other changes which resulted in the transfer of employees from the control and supervision of the County Board to the Governing Commission and the use of the Merit System rather than the Civil Service System for appointment, promotion, demotion and removal. Two important sections of the Illinois Revised Statutes by which some of these changes were affected are §§ 5021 and 5026 of Chapter 34. Section 5021 provided the Commission with power to appoint chief administrative officers and such other administrators, medical directors and other executive and administrative employees as the Commission deemed necessary.[10] All appointed positions under § 5021 were Civil Service positions with the exception of chief administrative officers. 1969 Ill.Rev.Stat. Ch. 34, § 1144. Civil Service employees could not be removed, discharged or suspended for more than thirty days except for cause to be determined in conformity with certain specified procedures. 1969 Ill.Rev.Stat. Ch. 34, § 1118 and § 1119. Chief administrative officers by virtue of § 5021 served at the pleasure of the Commission.
 
 
 9
 In 1970 the Illinois legislature amended § 5021 and added § 5026 to the Governing Commission Act.[11] As amended, § 5021 transferred the power to appoint administrators, medical directors and other executive and administrative employees from the Commission to the chief administrative officers. These appointments were to be made only "by and with the consent of the Commission." All other employees were to be appointed in accordance with the Merit System.
 
 
 10
 Section 5026 transferred to the Governing Commission all county officers and employees who were subject to the supervision and control of the Commission, and established the Merit System under which most employees of the Act were placed.[12] All appointments and promotions, excluding positions under § 5021 (e. g. medical directors), were to be made solely on the basis of merit and fitness. However, medical directors who held civil service status in that position for longer than 10 years as of the effective date of the 1970 amendments were expressly protected in that position under the Merit System. Also, employees holding permanent civil service status as of the effective date of the amendments were automatically merit employees. With respect to discharge and reduction, § 5026 provided the following:
 
 
 11
 Employees shall not be discharged or reduced except for cause set forth in rules and regulations, provided that employees whose appointment is by and with the consent of the Commission shall serve at the pleasure of the Commission.
 
 
 12
 (This provision is hereinafter referred to as the "at pleasure" provision.)
 
 
 13
 Section 5026 was amended in 1971.[13] Basically the amendments established a set of procedures to which employees were entitled before discharge, demotion or suspension. Of greater importance for our purposes, however, is the deletion of the "at pleasure" provision and appearance of the following in its place:
 
 
 14
 No merit or career employee may be discharged, demoted or suspended for a period of more than 30 days, except for cause and upon written charges.
 
 
 15
 Unlike the 1970 version of § 5026, the 1971 amendment did not expressly provide for the discharge or reduction of employees appointed by and with the consent of the Commission.
 
 
 16
 In the midst of this reorganization scheme, the Hoffman case was decided. In Hoffman, a doctor who enjoyed civil service status prior to the 1969 Act sought to enjoin the Commission from removing him without notice and a hearing from one of the two administrative positions he held.[14] On appeal from an order granting plaintiff injunctive relief, defendants argued that plaintiff was a chief administrative officer who served at the pleasure of the Commission under § 5021, or alternatively, that the Commission's power to appoint plaintiff as medical director under that section implied the power to remove him without civil service procedures. Rejecting both these arguments, the court reasoned that such substantial changes providing for the removal of positions below superintendent from civil service status, or allowing for removal at the pleasure of the Commission solely on the basis of the Commission's power to appoint, could not have been intended in the absence of express statutory language. Hoffman, supra, 270 N.E.2d at 602.
 
 
 17
 On the basis of the Hoffman court's holding that a medical director is not a position which is served "at the pleasure of the Commission," and the legislature's deletion in the 1971 amendment of the express provision that "employees whose appointment is by and with the consent of the Commission shall serve at the pleasure of the Commission," the district court concluded that plaintiff possessed under Illinois law a property right in his position as medical director protected under the Due Process Clause of the Fourteenth Amendment.
 
 
 18
 Defendants contend that the district court erred both in the significance it attached to the Hoffman decision and in its interpretation of the statutory changes.
 
 
 19
 We agree with defendants that Hoffman is factually distinguishable from the instant case. Unlike the plaintiff in Hoffman who enjoyed the protection of civil service, Dr. Young was not appointed as a merit employee, nor does he come within the ten year provision of § 5026. Thus, when the Hoffman court held that the Commission's power to appoint does not imply a power to remove, it was dealing with an employee who possessed underlying civil service protection. Considering this difference, it is doubtful that plaintiff could rely upon Hoffman alone to prove the existence of a property right.
 
 
 20
 This distinction, however, is of minimal importance because plaintiff does not claim that he is a merit employee or that he has held civil service status for the requisite period so as to benefit from the ten year provision of § 5026. We think that the real significance of Hoffman lies more in its language and relation to subsequent statutory changes rather than its isolated holding, and for this reason the case is useful, if not essential, in determining whether the legislature intended by the 1971 Amendment to § 5026 to give plaintiff a property right in his position as medical director.
 
 
 21
 Defendants, relying in large part upon the various statutory developments in the Governing Commission Act, submit simply that if the legislature intended medical director such as plaintiff to possess a property right, it would have expressly provided that medical directors could be dismissed only for cause and only by certain procedures. While the absence of express statutory language to that effect may be persuasive in deciding whether a property right exists, it is not dispositive. Cf. Adams v. Walker, 492 F.2d 1003, 1006 (7th Cir. 1974). In this case, where the institution by which plaintiff is employed, as well as the specific position which he holds, have been objects of a continual series of legislative enactments, we would be remiss if we attempted to determine whether the legislature intended to give plaintiff a property right only on the basis of the amendment in its present state. Cf. Follett's Illinois Book & Supply, Inc. v. Isaacs, 27 Ill.2d 600, 190 N.E.2d 324 (1963). The question must therefore be decided by looking to the history, existing circumstances and contemporaneous conditions of the legislation. See People ex rel. Hanrahan v. White, 52 Ill.2d 70, 285 N.E.2d 129 (1972), cert. denied sub nom. Splinter v. Hanrahan, 409 U.S. 1059, 93 S.Ct. 562, 34 L.Ed.2d 511, as well as the general rules and presumptions employed by the Illinois courts in their endeavors to determine legislative intent.
 
 
 22
 Turning first to the 1970 Amendments, it is clear that under §§ 5021 and 5026 medical directors such as plaintiff did not possess a property right. Section 5026 expressly provided at that time "employees whose appointment is by and with the consent of the Commission shall serve at the pleasure of the Commission." A corollary of defendants' argument that the solution to the legislature's intent lies solely in the absence of express language in the present amendment, is that no significance should be attributed to the deletion of the "at pleasure" provision from the 1970 version of § 5026. We would be able to accept this argument if, as defendants argued in the district court, the "at pleasure" provision was simply superfluous in the context of the amendments. Assuming this provision to be superfluous, it follows that medical directors under both the 1970 and the present amendments serve at the pleasure of the Commission, not by virtue of the presence or absence of this provision, but solely because these appointments are not accompanied by merit status pursuant to § 5021.
 
 
 23
 We are unable to accept, however, that the "at pleasure" provision of § 5026 was mere surplusage. In addition to adopting the general rule that statutes should be construed so that no sentence or word is superfluous, In Re Cregar's Estate, 30 Ill.App.3d 798, 801, 333 N.E.2d 540, 543 (1975), the Illinois courts have stated that if the intent of the legislature is clear from the reading of the statute, words unnecessary to express the intent of the act may be regarded as surplusage. People v. Williams, 116 Ill.App.2d 332, 340, 252 N.E.2d 555, 559 (1969). While it is clear from § 5021 and § 5026 that the Illinois legislature chose not to bestow upon medical directors the full panoply of benefits available under the Merit System, we do not think it at all clear that pursuant to those sections, excluding the "at pleasure" provision, the legislature intended that medical directors would serve only at the pleasure of the Commission. As we have already noted, only the service of chief administrative officers was expressly limited to the pleasure of the Commission. In addition, all employees appointed under the act other than chief administrative officers and those appointed by and with the consent of the Commission were appointed under the Merit System. The first part of the sentence in § 5026 containing the "at pleasure" provision clearly applies to this group of employees. See note 12, supra. Thus, it is apparent that while the act provided for the discharge of most employees, no section applied to employees appointed by and with the consent of the Commission except the "at pleasure" provision. This resulting ambiguity surrounding the discharge of employees appointed by and with the consent of the Commission is sufficient to conclude that the "at pleasure" provision in the 1970 version of § 5026 was not surplusage and that it indicated the legislature's intent not to give employees appointed by and with the consent of the Commission a property interest in their position.[15]
 
 
 24
 Any question regarding the significance of the deletion of the "at pleasure" provision is removed when that deletion is considered in light of the Hoffman decision and the presumption that the legislature acts with knowledge of judicial decisions concerning prior and existing law. See Mier v. Staley, 28 Ill.App.3d 373, 382, 329 N.E.2d 1, 17 (1975). In rejecting the argument that the Commission's power to appoint implied the power to remove, the court reasoned:
 
 
 25
 Again, the legislature could easily and consistently have stated that these personnel would serve at the pleasure of the Commission (as was done with chief administrative officers referred to in the first sentence), if this had been the intention.
 
 
 26
 Hoffman, supra, 270 N.E.2d at 602.
 
 
 27
 We think that the Illinois courts would apply this same reasoning in deciding whether the legislature intended plaintiff to serve at the pleasure of the Commission, especially where an express provision to that effect was first enacted and later deleted. Furthermore, considering this rationale as well as the court's reference to both § 5021 and § 5026 in noting that the 1970 amendment expanded the Commission's appointment and dismissal power over supervisory personnel, it is unlikely that the Hoffman court considered the "at pleasure" provision surplusage.[16] Accordingly, we conclude that plaintiff possesses a property interest in his position of medical director sufficient to invoke the due process requirements of the Fourteenth Amendment.
 
 II. THE PROCEDURES
 
 28
 Defendants argue alternatively that if plaintiff possesses a property right in his position of medical director, that right arises by virtue of § 5026 which provides procedural protections to "career" employees. Those procedures to which plaintiff is entitled are limited, defendants continue, to the procedures allowed in the statute. See note 13, supra.
 
 
 29
 Defendants misconceive the distinction between substantive property rights whose existence must be decided by reference to state law, and procedural rights which attach by virtue of the Due Process Clause of the Fourteenth Amendment by balancing respective state and individual interests. It is true as defendants submit that in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), three members of the court expressed the view that where the statute giving rise to a property right also provides a procedural mechanism for enforcing the right, the procedures for enforcement are limited to those provided in the statute. Arnett, 416 U.S. at 152, 94 S.Ct. 1633. The majority of the Court, however, rejected this view. See Arnett, 416 U.S. at 211, 94 S.Ct. 1633 (Marshall, J., dissenting); see also Bishop, 96 S.Ct. at 2084-2085 (White, J., dissenting).[17]
 
 
 30
 In any event, we decline consideration of this question because neither the argument that plaintiff is a career employee or that § 5026 prescribed the applicable procedural mechanism was raised below. Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796 (1940); Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co., 508 F.2d 417, 420 (7th Cir. 1975). Furthermore, because defendants acquiesced in the procedures ordered by the district court, we need not decide whether those procedures were required by due process and thus independently analyze the "government and private interests that are affected." Mathews v. Eldridge,424 U.S. 319, 334, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); see generally, Rabin, Job Security and Due Process, 44 U.Chi.L.Rev. 60 (1976).[18]
 
 III. THE RECORD BELOW
 
 31
 We now consider the narrow question whether the Commission's decision to terminate plaintiff as represented in its statement of reasons was based on the findings of the panel as required by the district court. We are not here attempting to review defendants' judgment as to the severity of plaintiff's actions or the extent of discipline that should be imposed. This judgment is clearly within the province of the Commission as the local administrative body charged by the state legislature with the responsibility of administering the hospital and thus involves expertise and experience not generally possessed by federal courts. See Hortonville Joint School District No. 1 v. Hortonville Education Association, 426 U.S. 482, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1 (1976); See also Olshock v. Village of Skokie, 541 F.2d 1254, 1262 (7th Cir. 1976) (Wood, J., dissenting). It should not be set aside unless it is found to be arbitrary and capricious. Cf. River Forest Pharmacy v. Drug Enforcement Administration, 501 F.2d 1202, 1206 (7th Cir. 1974). Moreover, inferences and conclusions drawn from the record by an administrative body possessing expertise should not be disregarded even though a reviewing court might arrive at different ones. First Wisconsin Bankshares Corporation v. Board of Governors of the Federal Reserve System, 325 F.2d 946, 958 (7th Cir. 1963); United States Retail Credit Association v. Federal Trade Commission, 300 F.2d 212 (4th Cir. 1962). In this unique case, therefore, where defendants raised no objection to the district court's decision that due process required confinement to the facts as submitted by the panel, cf. Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), we review only whether that decision was complied with. If it was not, the resulting prejudice to plaintiff, worked by the Commission's reliance on unproven purported facts or facts plaintiff had no opportunity to disprove, requires setting aside the Commission's decision as a violation of due process as well as a violation of the district court's order.
 
 
 32
 The first reason for discharge considered by the court concerned charges 4, 5 and 6. The panel found that pursuant to a request to prepare and submit a contingency plan for operation of the hospital in the event of a strike, plaintiff entered into an agreement with the house staff in his department. Under the terms of the agreement the house staff would provide full care to patients in the general ward admitted prior to the strike, but no care to general ward patients or emergency room patients admitted after the strike except for life-threatening situations. Plaintiff agreed with the house staff that those who performed according to the agreement would not be subject to disciplinary action and that he would oppose disciplinary action against the house staff if initiated by any other source. The panel found this agreement violated the hospital's "business as usual" policy which plaintiff opposed as a practical impossibility and that it constituted an interference with strike negotiations. The panel also found, however, that although the Commission instructed the department heads to prepare contingency plans, the Commission and chief administrative officers "abandoned the department chairmen to their own devices to provide patient care as best they were able with a reduced staff . . . in effect (placing) its Executive Medical Staff between the rock and the whirlpool." (Panel's Report, p. 30). This failure to provide guidance was criticized by the panelists. The panel further found that the services provided for in plaintiff's agreement were greater than those the house staff originally planned to offer, and that plaintiff averted a withdrawal of services by attending physicians who considered that action in response to the hard line stance of the Commission. The extraordinary service of attending physicians which involved fifteen hour work days during the strike was credited to plaintiff's leadership. Finally the panel found that plaintiff's "prime motive in making the agreement was not to aid and abet the strike but to get the best patient coverage he could in his department. He was concerned with protecting the sick human beings in his charge. . . ." (Panel's Report, p. 29)
 
 
 33
 In response to charges 4, 5 and 6, the Commission's resolution provided the following:
 
 
 34
 . . . the Health and Hospitals Governing Commission believes that Dr. Young willfully and deliberately, in time of severe crisis, and in contravention of direct order not to interfere in Health and Hospitals Governing Commission negotiations with the house officers took actions and permitted housestaff actions which hampered and diminished medical care to patients, encouraged the housestaff to continue a strike, enjoined by the Circuit Court of Cook County and jeopardized reimbursement and that said actions were and are good, and sufficient cause for discharge.
 
 
 35
 We agree with the district court that these reasons for discharge are without support in the record. While under plaintiff's contingency plan the house staff did not provide this normal amount of services, the amount of services that were provided were greater than those the house staff otherwise intended to supply. Furthermore, faced with the possibility of severely decreased patient care, plaintiff secured the extended services of attending physicians during the strike. These facts do not support the conclusion or inference that plaintiff's actions hampered and diminished patient care.
 
 
 36
 For much the same reason the Commission's conclusion that plaintiff encouraged continuation of the strike is also without support in the record. Defendants submit that the striking house staff were encouraged because plaintiff, a higher officer, entered into an agreement contrary to the Commission's strike policy. The agreement was not entered into with a motive to aid and abet the strike, but rather to provide for greater patient care. While plaintiff's motive is not controlling insofar as the decision to discipline is concerned, see Fink v. Securities & Exchange Commission, 417 F.2d 1058 (2d Cir. 1969), in the absence of direct evidence concerning the effect of plaintiff's actions on the house staff, it controverts the inference that plaintiff encouraged the strike. In addition, the agreement was arrived at only after the house staff made its initial decision to withhold services and required services greater than those originally planned. These facts do not support the inference that plaintiff's actions encouraged continuation of the strike, and that conclusion is entirely speculative.[19]
 
 
 37
 The second reason in support of discharge considered by the court involved charge number 1. The panel found that plaintiff willfully failed to comply with a directive requiring the daily submission of attendance data on house officers during the strike. In his failure to comply, the panel also found that plaintiff engaged in "gamesmanship" by narrowly construing the meaning of "on duty." The panel further determined, however, that no official complaint was made to plaintiff about the adequacy of his response and he was never specifically directed to remedy it. While the medical director who issued the directive orally complained to plaintiff about his response, the panel found this to fall short of a specific directive to remedy.
 
 
 38
 In response to these findings which substantiated charge number 1, the Commission's resolution provided:
 
 
 39
 the Governing Commission believes that the information required and requested of Dr. Young was vital to the Commission's ability to make judicious and reasonable policy gravely affecting the health care and even the lives of patients and persons applying to Cook County Hospital for medical care, and having grave potential for reimbursement and for the public purse in the event of hospital liability and/or medical malpractice suits, and that the failure and refusal of Dr. Young, as director of the largest single department of Cook County Hospital, to furnish such information severely handicapped the Governing Commission in the making of such policy decisions. The Commission believes that Quentin Young, M.D. through meetings with the Executive Director of the Health and Hospitals Governing Commission, and the Director and Medical Director of Cook County Hospital and his experience far in excess of three years at Cook County Hospital as a high level director and physician, had knowledge of the urgent need for such information and further believes that Dr. Young's failure to respond as required was willful and merits discharge.
 
 
 40
 We are unable to agree with defendants that the record supports the conclusion that the attendance data required of plaintiff was "vital to the Commission's ability to make judicious and reasonable policy gravely affecting the health care and even the lives of patients . . ." or that it had "grave potential for reimbursement and for the public purse in the event of hospital liability and/or medical malpractice suits. . . ." The panel noted that the data was given to the legal staff and the administration's strike committee for use in legal action against the house staff. While the information was also used to provide patient capacity information, we agree with the district court that in light of the panel's finding that plaintiff was not guilty of failing to accumulate data to determine staffing and patient care responsibility, the attendance data was not essential for this purpose. Furthermore, as the district court observed, the record is devoid of any evidence indicating that plaintiff's department failed to cover its patients.
 
 
 41
 With respect to the asserted financial implications of plaintiff's failure to supply the attendance data, the panel's report did not contain any findings that referred to reimbursement, the public purse, or malpractice liability. Defendants submit for the first time on appeal, however, that reimbursements under certain funding statutes which operate on a cost plus basis or other similar formulae were affected by the information required of plaintiff. In addition to complete lack of evidence connecting the statutes and the attendance data, as well as the absence of any reference to these statutes in the Commission's resolution, cf. Federal Power Commission v. Texaco, 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974), the panel expressly found that the record did not support the assertion that the attendance data was for time and payroll purposes. Although the Commission undoubtedly possesses special knowledge of the hospital's financing scheme, in view of the panel's findings regarding the purpose of the attendance data and the corresponding lack of support for defendants' funding argument, we conclude that the Commission's assertion as to the financial consequences of plaintiff's failure to provide the required attendance data is without support in the record.
 
 
 42
 The third and final reason for discharge considered by the court concerned charge number 2 alleging plaintiff's failure to accurately certify the time worked by residents and interns during the strike. The panel found plaintiff guilty of the charge and also found that plaintiff engaged in "gamesmanship" in his interpretation of the certification requirements. In response to the panel's findings, the Commission's resolution provided:
 
 
 43
 With respect to that part of charge number 2 alleging failure "to accurately certify" the time worked by the residents and interns in his department during the strike, sustained by the Hearing Panel, that said action by Dr. Young was knowingly in contravention of the Governing Commission policy and in serious disregard for the proper disposition of public funds by a highly placed public employee and that such willful and knowing malfeasance merits discharge.
 
 
 44
 While we agree with the district court that this action by plaintiff is least defensible, we also agree that the record does not indicate that plaintiff's activity constituted a "serious disregard for the proper disposition of public funds. . . ." We note initially that the failure to accurately certify time worked during the strike arose out of the agreement whereby plaintiff was able to guarantee service which the striking house staff would not have otherwise provided.[20] Again, this agreement was born out of the necessity of providing patient care and arrived at in the absence of effective guidance by the Commission. Furthermore, the absence of evidence that the Commission refused to pay or take similar action as to the striking house staff, even though it possessed materials and knowledge sufficient to discharge plaintiff for his failure to certify time worked, indicates that in addition to possibly accepting the benefits of plaintiff's contingency plan during a severe condition of crisis, the Commission did not regard the improper certification by plaintiff to be as serious as it so concluded in its resolution.
 
 IV. CONCLUSION
 
 45
 Although defendants have not raised the question before this court or the district court, we do not think remand to the Commission for reconsideration of plaintiff's discipline would serve a useful purpose. The district judge, having presided over several days of hearings, described this litigation as the "culmination of a bitter controversy" that has been "viewed by some as part of a power struggle for control over Cook County Hospital." The district judge also noted that the composition of the Commission has changed since the beginning of the litigation, new members taking sides against Commissioners who served during the strike. Moreover, we share in the court's reluctance to assume evaluation of staff performance as well as its observation that the report of the panel's majority represents a thorough and thoughtful analysis by two eminent disinterested parties. Accordingly, we hold that the district court did not err in adopting the panel's recommendation regarding the discipline to be imposed upon plaintiff.
 
 
 46
 For the foregoing reasons the judgment appealed from is
 
 
 47
 AFFIRMED.
 
 
 
 *
 Honorable JAMES L. FOREMAN, United States District Judge for the Eastern District of Illinois, is sitting by designation
 
 
 [1]
 In addition to claiming that he had been deprived of a property interest without due process, plaintiff alleged that he was terminated for exercising his First Amendment right of free speech. Although the district court heard testimony concerning the reasons for plaintiff's termination, the court expressly restricted its ruling to the issue of plaintiff's property interest and his right to a due process hearing. Neither party has raised a First Amendment question in this appeal
 
 
 [2]
 The formal charges which were numbered one through six as follows, focused on plaintiff's actions during the strike. Briefly summarized, the charges alleged that plaintiff:
 1) Failed to deliver to his immediate supervisor by 10:00 a. m. each day during the strike a list containing the total number of house officers in the department and the names of those officers actually on duty with reasons why those officers who were supposed to be on duty were not;
 2) Failed to accumulate proper and sufficient attendance and time worked data for payroll purposes, and failed to accurately certify the time worked by residents and interns within the Department of Medicine during the strike period;
 3) Failed to accumulate proper and sufficient attendance and time worked data of house staff physicians in order to reasonably and accurately determine staffing and patient care responsibilities during the strike period;
 4) Aided and abetted striking house staff personnel in their strike actions by actively agreeing to and permitting, or in the alternative by condoning and allowing members of the house staff to attend to and care for only those patients admitted prior to 6:30 a.m., October 27, 1975 (the day the strike commenced) in opposition to and in derogation of the policies of the Commission;
 5) Failed to direct the house staff to treat all patients in the hospital or those patients who presented themselves for treatment during the strike period, in contravention of his administrative duty to supervise and direct subordinate employees in accordance with the policies of the Commission; and
 6) Failed to follow and comply with certain orders and directions from defendant Brashears, Chairman of the Commission, directing plaintiff not to interfere in Commission negotiations with the house staff.
 
 
 [3]
 Pursuant to the court's order, one member of the panel was selected by plaintiff, one member was selected by defendants, and the third member, who acted as a neutral chairperson, was appointed by the court
 
 
 [4]
 The panel relied upon the Illinois case Cutright v. Civil Service Commission, 90 Ill.App.2d 289, 294, 232 N.E.2d 312, 315 (1967), for its definition of "sufficient cause". While plaintiff argued below that federal rather than state law controlled the meaning of "sufficient cause", neither party has challenged on appeal either the panel's application of Illinois law or the resulting definition of "sufficient cause"
 
 
 [5]
 Plaintiff urged the district court to bind the Commission to the panel's decision regarding discipline as well, arguing that the Commission's earlier decision to terminate plaintiff rendered the Commission incapable of deciding the discipline question impartially. The court rejected this argument however, expressing its concern for impartiality while at the same time reserving to the Commission its ultimate responsibility of deciding whether and to what extent discipline should be imposed for employee infractions
 
 
 [6]
 One panel member filed a dissent expressing the view that the charges against plaintiff were totally without foundation and should be dismissed. A second member filed a concurring opinion attributing the confrontation to the lack of understanding of the parties' respective roles during the strike
 
 
 [7]
 Specifically, the court found that the Commission, in contravention of the court's order, did not bind itself to the panel's findings of fact but rather reformulated the facts and drew up offenses unrelated to the panel's findings. The court also found that the Commission failed to consider all the facts, including those that mitigated plaintiff's offenses, that the Commission seemingly relied on facts not proven, and that the Commission reached factual determinations expressly rejected by the panel
 
 
 [8]
 Because we conclude that the Commission's decision to terminate plaintiff was not based on the record, we need not decide whether that decision was so tainted with bias or prejudice so as to deny plaintiff due process. See generally Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); see also Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)
 
 
 [9]
 In Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077-2078, 48 L.Ed.2d 684 (1976), the Supreme Court again reiterated the proper inquiry for deciding whether a property interest exists in employment:
 A property interest in employment can, of course, be created by ordinance, or an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.
 See also Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Confederation of Police v. City of Chicago, 547 F.2d 375, 376 (7th Cir. 1977).
 
 
 [10]
 Section 5021, Ch. 34, Ill.Rev.Stat.1969, provided the following:
 The Commission may appoint such chief administrative officers as it determines are necessary who shall serve at the pleasure of the Commission for the Hospitals which are operated by such county. In addition the Commission shall appoint such administrators, medical directors and other executive and administrative employees as it determines are necessary.
 
 
 [11]
 As amended in 1970, § 5021 read as follows:
 The Commission may provide for such chief administrative officers as it determines are necessary who shall serve at the pleasure of the Commission for the hospitals or agencies under its responsibility. The chief administrative officers shall appoint by and with the consent of the Commission such administrators, medical directors and other executive and administrative employees as the Commission determines are necessary. All other employees shall be appointed in accordance with the merit system provided by this Act.
 
 
 [12]
 Section 5026 as enacted in 1970 provided:
 All officers and employees subject to the Commission's responsibility shall be subject to the supervision and control of the Commission as agent of the county, and shall be treated as employees of the county within the provisions of Article 9 of the Illinois Pension Code. All appointments and promotions to positions, except as provided in Section 11 shall be made solely on the basis of merit and fitness, to be ascertained insofar as practical by competitive examination or other accepted techniques of personnel administration based on merit principles. However, any person holding an appointment as a Medical Director under Section 11 of this Act at the time this Amendatory Act of 1970 goes into effect and who has held civil service status in that position for longer than 10 years shall be protected in that position under the Merit System established in this Act. The Commission shall adopt rules and regulations based on such principles governing the appointment, training, promotion, transfers, lay-off, removal, discipline, fringe benefits and welfare of its employees.
 Employees holding permanent civil service status on the effective date of this Amendatory Act shall not be required, in order to meet the Merit System requirements of this Act, to take further examinations as to merit and fitness for the positions they hold, but shall become merit employees under this Act.
 Employees shall not be discharged or reduced except for cause set forth in the rules and regulations, provided that employees whose appointment is by and with the consent of the Commission shall serve at the pleasure of the Commission.
 Upon the effective date of this amendatory act, all employees under this Act shall no longer come within the provisions of Civil Service Law of Cook County, Illinois, but instead, shall come within the provisions of the Merit System provided for in this Act, except as provided herein.
 
 
 [13]
 Section 5026 as amended in 1971 provides as follows:
 All officers and employees subject to the Commission's responsibility shall be subject to the supervision and control of the Commission as agent of the county, and shall be treated as employees of the county within the provisions of Article 9 of the Illinois Pension Code. All appointments and promotions to positions, except as provided in Section 11, shall be made solely on the basis of merit and fitness, to be ascertained insofar as practical by competitive examination or other accepted techniques of personal (sic) administration based on merit principles. However, any person holding an appointment as a Medical Director under Section 11 of this Act at the time this amendatory Act of 1970 goes into effect and who has held civil service status in that position for longer than 10 years shall be protected in that position under the merit system established in this Act. The Commission shall adopt rules and regulations based on such principles governing the appointment, training, promotion, transfers, lay-off, removal, discipline, fringe benefits and welfare of its employees. Employees performing services in and for the various hospitals and hospital facilities operated by the Commission on July 1, 1970 who held permanent civil service status in the Cook County Civil Service System on said date are deemed to have met all the Merit System requirements of this Act and became merit employees under this Act with the same standing, grade, class or rank which they held in the classified service of Cook County. For determining seniority such employees shall be credited with the time served by them in their respective employments with Cook County. No merit or career employee may be discharged, demoted or suspended for a period of more than 30 days except for cause and upon written charges. Such employee shall have an opportunity to be heard in his own defense. Such charges shall be heard by or before the Cook County Hospitals Governing Commission, or by or before some officer or board appointed by the Commission to conduct the hearing. Such hearing shall be commenced within 30 days of the filing of the charges. In case an employee is found guilty the discharge, demotion or suspension, as the case may be, shall stand. In the event he is found not guilty, he shall be restored to duty with seniority and vacation rights unimpaired and with pay for the time lost. In the conduct of the hearing each member of the Commission and any officer or board appointed by it may administer oaths and may secure by its subpoena, both the attendance and testimony of witnesses and the production of books and papers relative to the hearing. Upon the effective date of this amendatory Act, all employees under this Act shall no longer come within the provisions of Civil Service Law of Cook County, Illinois, but instead, shall come within the provisions of the merit system provided for in this Act, except as provided herein.
 
 
 [14]
 Although Hoffman was decided in 1971, the discharge of plaintiff in that case preceded the effective date of the 1970 version of § 5021 and the newly enacted § 5026. Thus, only § 5021 in its 1969 form was determined to be applicable to the case. Hoffman, supra, 132 Ill.App.2d at 820, 270 N.E.2d at 602-603
 
 
 [15]
 Defendants submit that the third sentence of § 5026, 1970, providing medical directors who have held their position with civil service status for ten years with protection under the Merit System, creates two classes of medical directors: one class with a property interest and one without a property interest. See note 12, supra. We think that a plain reading of this sentence within the context of the entire section indicates an intent, however, to give medical directors within the provision benefits of the Merit System in addition to those relating to removal, e. g., appointment, promotion, transfers, lay-offs, discipline, fringe benefits, and welfare of employees. Thus, if any classes were created by this section, they are the class of medical directors with full merit protection and the class without full merit protection. A member of the latter class would not therefore be deprived of a property interest by creation of a property interest in the former
 
 
 [16]
 Defendants' reliance on Waesch v. Elgin, Joliet & Eastern Railway Co., 38 Ill.App.2d 56, 186 N.E.2d 369 (1962), begs the question. In that case the court decided that a statute enacted subsequent to two judicial decisions did not conflict with those cases thus allowing the previous case law to control. At 38 Ill.App.2d 58, 186 N.E.2d 371, the court stated that "If the legislature intended to change the existing law, it could have done so." Neither this general statement nor the holding of the case itself are helpful in determining what the legislature intended by particular statutory changes relevant to this case
 
 
 [17]
 Although four dissenting Justices in Bishop expressed the view that the majority decision marked an acceptance of the proposition rejected by the majority in Arnett, see Bishop, supra, at 2082, n.4 (Brennan, J. dissenting); Id., at 2085 (White, J. dissenting, Marshall, J. joining in dissent); Id., at 2085-86 (Blackmun, J. dissenting), the Bishop majority disavowed the charge noting that its decision rested on the determination that under the state law plaintiff possessed no property interest. Bishop, supra, at 2078, n.8
 
 
 [18]
 Directing our attention to that part of § 5026 providing "the discharge, demotion or suspension as the case may be shall stand," defendants assert they never waived the issue of the Commission's ultimate responsibility to determine plaintiff's discipline. This assertion is curious in light of defendants' response that the procedures set forth by the court, including the court's retention of jurisdiction should either party seek review (Tr. Dec. 19, 1975 at p. 10), were "entirely reasonable." (Tr. Dec. 19, 1975 at p. 19) Even if we were to consider the point defendants raise here, it is clear from the record that the district court determined only whether the Commission's decision was based upon the record as required by its order and never purported to review the Commission's judgment or substitute its own as to the degree of discipline plaintiff deserved
 
 
 [19]
 Defendants do not challenge the district court's conclusion that no evidence supported the statement that plaintiff's agreement jeopardized reimbursement, or that this conclusion is duplicative of charge number 2
 
 
 [20]
 Under the terms of the agreement only those house officers who refused to provide services in the general ward were certified by plaintiff to receive no pay. Those house officers who did comply with the agreement received full pay although they attended a reduced patient load in the general ward and did not perform all the duties normally required