### Peter McGurn

*v.*

### The Board of Education of the City of Chicago.

*Filed at Ottawa May 14, 1890.*

1. Schools — *annexation of cities, etc.* — *pre-existing laws and ordinances controlling.* The annexation of territory to a municipality does not carry with it the necessity of formulating a code of municipal laws for the government of the territory annexed. By becoming a part of the municipality, it is, *ipso facto*, brought under and made subject to all the laws by which the municipality itself is governed.

2. Same — *annexation* — *as affecting the control of schools in the new territory.* Where a city, incorporated town or village containing school districts becomes annexed, under the act of 1889, to a city having a population of 100,000 or more, the effect thereof is to annex such school districts to the board of education of such city, and to give to the board of education of the city taking the annexation, the exclusive control of the schools, school funds and property in the annexed territory.

3. So the moment the territory of the town of Lake and the village of Hyde Park became, under the act of 1889, annexed to the city of Chicago, it became a constituent part of that city, and from that time became subject to the same laws and the same policy which the statutes in force had already provided for the government of the city and its institutions. The statute already in force having committed all the public schools of the city to the control and management of the city board of education, the instant the territory became a part of the city all public schools within the annexed territory fell under the jurisdiction of such board,—not by force of any express provision of the annexation, law, but by force of the existing statute, which had committed all schools in the city to the jurisdiction of said board.

4. Same — *control of school property* — *after annexation* — *constitutionality of act of 1889.* The act of 1889, for the annexation of towns and villages to contiguous cities, does not divest any vested rights in the school property, but expressly preserves all trusts with which the school fund and the other school property was impressed while held by the districts, townships and their officers, the only change effected being a change of trustee or custodian. To such a change there is no constitutional objection.

5. Statutes — *limited to one subject* — *and that to be expressed in the title* — *constitutional requirement.* The constitutional provision (sec. 13, art. 4,) has always received a liberal construction, and it has accordingly been held, that there may be included in an act any means which are

reasonably adapted to secure the object indicated by the title. The fact that many things of a diverse nature are authorized or required to be done, is unimportant, provided the doing of them may fairly be regarded as in furtherance of the general subject of the enactment.

6. The constitution does not require that all the legal effects of an act, such as a repeal of a former statute by implication, should be expressly stated in the title. Where the subject of the act itself is embraced in the title, all legal consequences necessarily flowing from it will, for the purposes of the constitutional requirement, be regarded as embraced in the title also.

7. Same—*act of 1889—relating to annexation of cities, etc.—and control of schools and school property.* The act entitled "An act to provide for the annexation of cities, incorporated towns and villages," approved and in force April 25, 1889, is not in contravention of section 13 of article 4 of the constitution, which provides that no act passed shall embrace more than one subject, which shall be expressed in the title. The several municipal corporations named in such title, and school districts, school townships and boards of education, are not two classes of corporations, existing under different laws, having different functions, powers and objects, and constituting wholly dissociate governmental agencies.

8. The affirmative provisions of the act relating to school property and school indebtedness of the annexed territory are strictly germane to the subject expressed in the act.

Appeal from the Circuit Court of Cook county; the Hon. Oliver H. Horton, Judge, presiding.

This was a bill in chancery, brought by Peter McGurn, Frank R. Metzinger and Daniel Sullivan, against the Board of Education of the city of Chicago, and George Howland, the superintendent of schools of said city, to restrain them from assuming jurisdiction over school districts 4, 6 and 10, of township 38, north, of range 14, east of the 3d principal meridian, in Cook county, and from attempting to take possession of the school property, school houses, books, papers or funds of said school districts, or from interfering with the regularly elected officers of said districts. A demurrer to said bill being sustained, and the complainants electing to abide by their bill, a decree was entered dismissing said bill at their costs for want of equity. From that decree McGurn alone has appealed to this court.

The bill alleges that the complainants are legal voters, taxpayers and residents of said districts, viz, McGurn of district 10, Metzinger of district 6, and Sullivan of district 4; that said districts 4 and 6 lie wholly within the town of Lake and said district 10 lies partly within the town of Lake and partly within the village of Hyde Park; that the public schools of said districts are managed and controlled by boards of education elected and organized pursuant to the provisions of section 1, article 6, of the School Law of 1872, and the corresponding provisions of the School Law of 1889, said boards having been in existence and operation in conformity to law for more than fifteen years; that by said statutes said boards were vested with the care, custody, control and protection of the school property in said districts, and the power to raise money by taxation for school purposes; that the school property of said districts consists of school house sites of the value of $90,000, and of fifteen school houses of the value of $200,000; that the trustees of said township 38 are by the School Law vested with the title to said property; that in addition, the township treasurer of said township has in his hands belonging to said districts moneys arising from taxation, viz, to district 4, $15,755.25, to district 6, $29,076.75, and to district 10, $22,-266.05, said money being subject only to the orders of said school boards for school purposes.

The bill further alleges that, on the 29th day of June, 1889, a pretended election was held in the village of Hyde Park and in the town of Lake. under and in pursuance of the "Act to provide for the annexation of cities, incorporated towns and villages, or parts of the same, to cities, incorporated towns and villages," approved and in force April 25, 1889, and that a majority of the legal voters of said village and of said town voted to be annexed to the city of Chicago, and that the election commissioners of Cook county have returned the result and the canvassing board have declared the same, and the proper certificates have been made under said act to the effect

that said village and said town were annexed to and have become parts of the city of Chicago; and while the complainants neither admit nor deny the conclusion of law in such cases as to whether such village and town were annexed to Chicago, yet they insist and aver that such annexation in no way affects the schools or school property, rights, jurisdiction and control thereof by said boards of education in said districts and of the school trustees, but on the contrary thereof, that said act and said election thereunder did not affect the same, but that the said school districts and said school township 38 are still intact the same as if there had been no action taken under said annexation act, and that the status of the property, rights, powers and control of said school districts have in no manner, by reason of such election, been disturbed, changed, controlled or affected, but that the school property, school system, money, lots, school houses and other property remain in the boards of education or school trustees, as the case may be, the same as though said pretended vote and annexation under said act had never occurred, and said annexation act had never been passed; that said boards exist and have existed regardless of the boundaries of other municipalities within which such school districts have been or are now situated; that the village of Hyde Park is a corporation organized under the general law; that it is not a city and has less than 100,000 inhabitants; that the town of Lake is a town organized under a special act of the General Assembly approved March 25, 1869; that neither of these corporations now has or ever has had the control or management of the public schools within their limits, or of the property dedicated and set apart for school purposes, but that all of the school property within the limits of said municipalities is owned and managed by said trustees and school boards and in no other way.

It is further alleged that, on the 29th day of June, 1889, the city of Chicago was a city of more than 100,000 inhabitants, and that under and pursuant to the school laws of the

State, there is established and exists in said city a Board of Education which has jurisdiction and control of all the schools and school property in said city, and that said Board of Education is, by virtue of the provisions of section 17, of article 6, of the School Law of 1889, created a corporation and vested with corporate powers; that there remains in the hands of the treasurer of said school township 38 the sum of $20,000, which is held by him for the use of the inhabitants of said township and for the support of schools therein, said fund being the proceeds of the sale of portions of school section 16 in said township, and that said Board of Education of the city of Chicago is about to take possession of said fund and devote it without discrimination to the support of schools within the entire city of Chicago.

The bill further alleges that, at said election, a large majority of the legal voters of said districts 6 and 10 voted against annexation of the village of Hyde Park and of the town of Lake to the city of Chicago, whatever may have been the vote in those municipalities outside of said districts; that the ballots cast in favor of annexation in Hyde Park read: "For annexation of the village of Hyde Park to the city of Chicago," and those cast in the town of Lake read: "For annexation of the town of Lake to the city of Chicago," and that none of said ballots expressed the intention of the voters to annex said school districts or said school township, and that the annexation of said districts or township was not within the intention of the voters nor within the operation of the law; that the complainants aver and insist:

1. That the management, control, disposition and use of the said school property is now in the boards of education of said districts, for the use of the inhabitants thereof.

2. That the control of said schools in said districts 4, 6 and 10 is in the boards of education of said districts; that the legal title to all school property in said districts, and the funds resulting from the sale of section 16, is now in said board of

school trustees, for the use of the inhabitants of said township 38 only, and that said funds do not belong to the city of Chicago.

3. That said Board of Education of Chicago and the city of Chicago have not, by virtue of said act of annexation or the proceedings thereunder, or the said pretended annexation of Hyde Park and Lake to Chicago obtained or acquired any right of property in the school property of said districts, nor the right to control or regulate the schools therein.

4. That said annexation act is contrary to the Constitution of the State.

But it is alleged that said Board of Education and the city of Chicago assert and claim that, by virtue of said annexation law and the proceedings thereunder, and the pretended annexation of Hyde Park and Lake to Chicago, said city has become vested with the school property of said districts, and that the Board of Education of Chicago has the power and authority to enforce its jurisdiction over said property, and over the schools of said districts, and to appoint teachers and other officers, all of which claims the complainants deny; and they aver that said Board of Education and said city, by their officers, agents and superintendents, are attempting to assert entire jurisdiction over the schools and school property in said districts, and are threatening to take possession of the same, and forcibly to assert their pretended rights in relation thereto, and that George Howland, the superintendent, officer and agent of said board, is now attempting to usurp the right to exercise absolute control of the schools and school property of said districts.

Mr. EDWARD MAHER, for the appellant:

The Annexation act pretends to give title to school property only. Management and control of the school system are not disturbed save by implication and the assistance of another law.

The board of education and the city of Chicago are two distinct and dissimilar corporations, and have independent gov-

ernmental functions.   *Speight* v. *People*, 87 Ill. 600; Const. art. 8, sec. 1; School act of 1889, art. 6, sec. 28.

That part of the Annexation act referring to schools violates the constitution.   Art. 4, sec. 13; *Dolese* v. *Pierce*, 124 Ill. 141.

· The act embraces more than one subject.   *Martin* v. *People*, 87 Ill. 525; *Town of Woo-Sung* v. *People*, 102 id. 654; *People* v. *Cooper*, 83 id. 591.

The Annexation act, in so far as it attempts to divest school titles and to interfere with school management, deals with a subject not embraced in its title, and thereby transcends and violates the constitution, and it becomes the plainest judicial duty to declare so much of the act null and void.   *Dolese* v. *Pierce*, 124 Ill. 141; *People* v. *Protestant Deaconesses*, 71 id. 229; *Lockport* v. *Gaylord*, 61 id. 279; *Welch* v. *Post*, 99 id. 471; *Railway Co.* v. *Lake View*, 105 id. 207; *People* v. *Mellen*, 32 id. 181; Cooley's Const. Lim. *159.

.  In this conclusion we have not overlooked those cases holding that subjects germane to the main purpose of the act may, without violation of the constitution, be included therein.   *Potwin* v. *Johnson*, 108 Ill. 70; *People* v. *Hazlewood*, 116 id. 319; *O'Leary* v. *Cook County*, 28 id. 534.

The rights of school districts of township 38, range 13, in section 16, will be lost by annexation.

Mr. Joseph B. Leake, for the appellee:

Article 8, section 1, of the constitution, provides "that the General Assembly shall provide a thorough and efficient system of free schools," etc.   In providing such system the power of the legislature is limited only by section 22, article 4, of the constitution, which prohibits the passage of local or special laws.   *Speight* v. *People*, 87 Ill. 601.

In the extension of the city limits of Chicago, the territory, as school districts or parts thereof, has always become merged in the school government of the city, without any other pro-

vision of law. *People* v. *Trustees*, 86 Ill. 614; *Murray* v. *Virginia*, 91 id. 558; *Winona* v. *School District*, 40 Minn. 13.

Mr. Justice Bailey delivered the opinion of the Court:

The main propositions urged by the appellant in support of the equity of his bill are, first, that the provisions of the statute under which the village of Hyde Park and the town of Lake have been annexed to the city of Chicago, even if valid, do not vest the Board of Education of the city of Chicago with the control of the common schools in the school districts heretofore existing in the annexed territory; and, second, that said statute, so far as it applies to the common schools and school property in the annexed territory, is unconstitutional and void.

While the bill does not in terms admit the regularity and sufficiency of the proceedings by which the annexation was effected, it raises no controversy on that question, and therefore, for all the purposes of this discussion, it will be assumed that, in the election and other proceedings which resulted in the annexation of Hyde Park and Lake to Chicago, all the requirements of the statute were duly observed.

In considering the first of the two propositions above stated it should be noticed that the appellant counsel admits, in his brief, as indeed in view of the provisions of the statute he was compelled to do, that said provisions are sufficient to vest in the city of Chicago the legal title to the school property of the several districts within the annexed territory, his contention, so far as this branch of the case is concerned being, that while the statute vests the legal title in the city, it leaves the beneficial interest in the districts, and also leaves the supervision, control and management of the schools themselves in the district authorities, in all respects as heretofore.

The statute, after fixing the mode and prescribing in detail the proceedings by which an incorporated city, town or village, or a portion of its territory, may become annexed to an ad-

joining incorporated city, town or village, provides, in section 4, that the city, village or incorporated town to which the whole of another city, village or incorporated town is annexed, shall assume and pay any and all debts, liabilities, bonds or obligations of the city, incorporated town or village so annexed, and shall become vested with the title and ownership of all property belonging to the annexed city, incorporated town or village, to be held for the same purposes and to the same uses, and subject to the same conditions as theretofore, and it also provides as follows: "If the public schools of such enlarged city, village or incorporated town are all in charge and under the control of one board of education, the said enlarged city, village or incorporated town shall assume and pay the indebtedness of each school district or township lying wholly therein, and shall become vested with the title and ownership of all property belonging to any school district or township lying wholly therein, to be held for the same purposes and to the same uses and subject to the same conditions as theretofore." In section 8, similar provisions are made for the payment of school indebtedness and the transfer to the corporation to which the annexation is made of the school property where but a part of a city, incorporated town or village is annexed and where the entire school district or township is included in the annexed territory, and for an equitable apportionment of the indebtedness and property where but part of a school district or township is annexed.

It must be admitted that in this legislation there is no affirmative provision by which the school districts in the annexed territory are dissolved and the control and management of the public schools in such districts transferred to the board of education of the enlarged municipality. But, as applied to the city of Chicago where, under the existing school system, all the public schools of the city are by law placed in charge and under the control of one board of education, it contains a clear recognition of said system and makes every necessary

provision which the law has not already made for a proper adjustment to it of the schools and school property in the annexed territory.   It provides for the payment of the school indebtedness and the transfer to the city of the school property, matters which were not provided for by laws already in force, leaving all other matters to be disposed of in accordance with the ample provisions already made by existing legislation.

The annexation of territory to a municipality does not carry with it the necessity of formulating a code of municipal law for the government of the territory annexed.   By becoming a part of the municipality, it is *ipso facto* brought under and made subject to all the laws by which the municipality itself is governed.   Those laws extend over and apply to it *ex proprio vigore*, and do not require express legislative action to give them such application.   Here, the instant the territory in question became annexed to Chicago, it became a constituent part of the city, and from that instant became subject to the same laws, the same municipal organization and the same polity which the statutes in force had already provided for the government of the city and its institutions.   The statutes already in force having committed all the public schools of the city to the control and management of the city Board of Education, the instant the territory in question became a part of the city, all public schools within that territory fell under the jurisdiction of said board, not by force of any express provision of the annexation law, but by force of the existing statute which had committed all schools in the city to the jurisdiction of said board.

The various statutes of the State in relation to public schools were revised and codified by the "Act to establish and maintain a system of free schools," approved and in force May 21, 1889, and as that act embodied the school law as it existed at the time the annexation in question took place, it will be unnecessary for us to refer to prior legislation.   Those portions

of the act material to the question under discussion are found in sections 17 to 28, article 6. Laws of 1889, p. 306.

By section 17 it is provided that in cities having over 100,000 inhabitants, the board of education shall consist of fifteen members, to be appointed by the mayor, etc. Section 21 provides that such board of education shall have charge and control of the public schools of such cities, and shall have power, with the concurrence of the city council, to erect or purchase suitable school houses and keep them in repair; to buy or lease school house sites; and to issue bonds for the purpose of building, furnishing or repairing school houses or purchasing sites, and provide for the payment of such bonds, and to borrow money for school purposes upon the credit of the city.

Section 22 empowers the board of education, among other things, to maintain, support and establish schools; to employ teachers and fix their compensation, and to dismiss or remove them for proper cause; to expel pupils for gross disobedience or misconduct; and to lay off and divide the city into school districts, and, from time to time, to alter the same and create new ones, as circumstances may require, and generally to have and possess all the rights, powers and authority required for the proper management of schools, with power to enact such ordinances as may be deemed necessary and expedient for such purpose.

Section 23 makes it the duty of the board of education, among other things, to take the entire superintendence and control of the schools of the city; to visit all the public schools as often as once a month; to establish all such by-laws, rules and regulations for the government, and for the establishment and maintenance of a proper and uniform system of discipline in the several schools, as may, in their opinion, be necessary; to determine, from time to time, how many and what class of teachers may be employed in each of the public schools, and employ such teachers and fix their compensation; and to pre-

scribe the method and course of discipline and instruction in the respective schools, and to see that they are maintained and pursued in a proper manner.

It thus appears that in cities of the class to which Chicago belongs, the entire supervision and control over all the public schools of the city is, by the provisions of the School Law, committed to the Board of Education of the city. This jurisdiction is necessarily exclusive. It follows that whenever territory in which there is an organized school district and one or more public schools is annexed and thereby brought into the city, the jurisdiction of the Board of Education immediately attaches, and the school district and its officers become *functus officio*. This results, not from any affirmative provision of the Annexation Law, but is the legal consequence of the *status* which annexation creates.

The second proposition urged in support of the equity of the bill is, that the Annexation Act, so far as it relates to public schools and school property, is in contravention of section 13, article 4, of the Constitution, which provides that, "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The subject expressed in the title to said act is, the annexation of cities, incorporated towns and villages, or parts of the same, to cities, incorporated towns and villages. The contention is, that the several municipal corporations named in said title on the one hand, and school districts, school townships and boards of education on the other, are two distinct classes of corporations, existing under different laws, having different functions, powers and objects, and constituting wholly dissimilar and dissociate governmental agencies, and therefore that those portions of the act relating to these various school corporations, relate to a subject entirely foreign to that of uniting adjoining cities, incorporated towns and villages by annexation.

We are unable to see any such repugnancy or incompatibility between the functions, powers and objects of these two

classes of corporations as to render it improper for the legislature, in its discretion, to commit them all to a single class of corporations. It is a well known fact that in the past history of our municipal corporations, the support, control and management of the public schools have not unfrequently been placed directly in charge of city governments. Whether that is the best or wisest mode of organizing and maintaining public schools has nothing to do with the question.

Nor is the repugnancy between the functions of these two classes of corporations established by the fact that, by our present School Law, the charge and control of schools in cities having over 100,000 inhabitants is committed to a board of education, an organization which, in some points of view, is to be regarded as a subordinate department of the city government, and in others, as an independent municipal corporation. Such distribution of municipal powers simply shows that in the judgment of the legislature a board of education is the best instrumentality for taking charge of and maintaining a system of free schools within the city, and not that the same functions might not constitutionally have been committed directly to the city.

But the annexation act does not attempt, by any affirmative legislation, to interfere with school matters except in two particulars, viz, first, by imposing upon the enlarged city the duty of assuming and paying the school indebtedness of the annexed territory, and, secondly, by vesting the city with the legal title to the school property in such territory, such property, however, to be held subject to the same uses and purposes for which it may have been held prior to annexation. In every other respect, the changes in the relative rights and powers of the school districts and the board of education resulting from annexation, follow, not from any express provision of the Annexation Act, but by implication of law, and as the necessary legal consequence of bringing outlying territory into and making it a part of the city.

It can not be doubted that the affirmative provisions of the act relating to the school property and school indebtedness of the annexed territory are strictly germane to the subject expressed in the bill. The constitutional provision above quoted has always received a liberal construction, and it has accordingly been held that there may be included in an act any means which are reasonably adapted so secure the object indicated by the title. *Larned* v. *Tiernan*, 110 Ill. 173. The fact that many things of a diverse nature are authorized or required to be done is unimportant, provided the doing of them may fairly be regarded as in furtherance of the general subject of the enactment. *Blake* v. *The People*, 109 Ill. 504; *Mix* v. *I. C. R. R. Co.* 116 id. 502; *People* v. *Hazelwood*, id. 319. But any provision in an act which has no tendency to promote the object and purpose of the act to which it belongs, is obnoxious to the constitutional provision. *Dolese* v. *Pierce*, 124 Ill. 140.

All those provisions inserted in the act for the purpose of prescribing the rights and obligations of the enlarged municipality growing out of the altered condition of things consequent upon annexation, especially those which were rendered legally necessary by the annexation, were clearly germane to the annexation itself. One of the legal consequences of the annexation being the obliteration of the school corporations in the territory annexed, it became legally necessary, as a part of the annexation scheme, to make some suitable provision for the assumption and payment of the debts of the corporations thus dissolved, and for the transfer of their property to some suitable trustee. What disposition should be made of the legal title to said property and what provision for the payment of said indebtedness was purely a matter of legislative discretion, but such provisions, whatever they might be, being made necessary by the annexation itself, were germane to that subject.

Nor can any constitutional objection be based upon the fact that the act involves legal consequences, arising by force of previously existing laws, beyond those expressly provided for. The constitution does not require that all the legal effects of an act, such as a repeal of a former statute by implication, should be expressly stated in the title. Such a thing would be legally impossible. Where the subject of the act itself is embraced in the title, all legal consequences necessarily flowing from it will, for the purposes of the constitutional requirement, be regarded as embraced in the title also. *Timm* v. *Harrison*, 109 Ill. 593; *Mix* v. *I. C. R. R. Co. supra.*

Nor is there any force in the objection that, by the transfer of the school property to the city, the inhabitants of the school districts and school township annexed are divested of their vested rights in said property, and particularly in the fund arising from the sale of portions of school section sixteen. The act expressly preserves all trusts with which that fund and the other school property was impressed while held by the districts and township and their officers, the only change effected, being a change of trustee or custodian. To such change there is no constitutional objection.

Counsel for the appellant makes considerable effort to demonstrate that the Annexation Act is a piece of unwise and improvident legislation. Whether it is so or not is a matter with which we have nothing to do. So long as an act contravenes no constitutional limitation, it is the duty of the courts, not to criticize but to enforce it, leaving the entire question of legislative policy to the body in which the Constitution has vested legislative discretion and upon whom it has imposed legislative responsibility.

We are of the opinion that the Circuit Court properly sustained the demurrer to the bill, and the decree therefore will be affirmed.

*Decree affirmed.*