BRIDGET DENISE LILLY, a Minor, by Barbara Lilly, her Mother and Next Friend, Plaintiff-Appellee, *v.* THE COUNTY OF COOK, Defendant-Appellant.—(BRIDGET DENISE LILLY, a Minor, by Barbara Lilly, her Mother and Next Friend, Plaintiff-Appellant, *v.* COMPREHENSIVE COUNTY HOSPITALS, HEALTH AND ALLIED MEDICAL PROGRAMS GOVERNING COMMISSION OF COOK COUNTY, Defendant-Appellee.)

First District (2nd Division)   No. 76-1682

Opinion filed May 16, 1978.—Rehearing denied June 16, 1978.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and John Brundage, Assistant State's Attorneys, of counsel), for appellant.

Leonard M. Ring, of Chicago, for appellee-appellant Bridget Denise Lilly.

Winston & Strawn, of Chicago (Calvin Sawyier, of counsel), for appellee Comprehensive County Hospitals, Health and Allied Medical Programs Governing Commission of Cook County.

Mr. JUSTICE BROWN delivered the opinion of the court:

Defendant, County of Cook, appeals from an order of the circuit court of Cook County, vacating, pursuant to plaintiff's section 72 motion, a final order dismissing the plaintiff's complaint as to this defendant. Plaintiff also appeals, requesting that the circuit court's order dismissing the Health and Hospitals Governing Commission of Cook County as a party defendant be reversed. We reverse both orders.

This action was brought to recover injuries sustained by plaintiff while she was a patient at Cook County Hospital in 1969, and the appeal concerns the powers and duties given to the Commission by the original statute which created it. For a better understanding of the questions presented, it will be helpful to set out the relevant events in chronological order.

In 1969, the Illinois General Assembly enacted, by Public Act 76-32, effective July 1969, the county hospitals governing commission act (Ill. Rev. Stat. 1969, ch. 34, pars. 5011-5029). For convenience, Public Act 76-32 will hereinafter be referred to as the "original statute." This original statute created the Comprehensive County Hospitals, Health and Allied Medical Programs Governing Commission of Cook County (hereinafter Commission). Prior to this time, Cook County Hospital had been owned, operated and managed by the County of Cook (hereinafter County).

The original statute, in section 10 thereof, provided that:

> "The Commission shall have the general responsibility of organizing, operating, maintaining and managing the various hospitals and hospital facilities owned by any such county and the hospital, medical, nursing, health and allied medical programs related thereto. It shall have the power to operate, maintain and

manage such hospitals, facilities and programs, to make and enter into contracts therefore, and to establish rules and regulations for the use, operation and management thereof." (Ill. Rev. Stat. 1969, ch. 34, par. 5020.)

Although this provision would appear to vest the Commission with total operating control over Cook County Hospital, the County (through the Cook County Board) retained control of the hospital's budget through a line-by-line veto power over appropriations (Ill. Rev. Stat. 1969, ch. 34, par. 5023).

In November 1969, plaintiff, then seven months of age, was a patient in Cook County Hospital for treatment of a high fever, diagnosed as acute meningitis. As a consequence of various alleged acts and omissions by the hospital staff, it became necessary to amputate plaintiff's right arm, and she suffered, in addition, irreparable brain damage.

In May 1970, a group of doctors at Cook County Hospital attempted to wrest control of the "purse strings" from the Cook County Board, claiming that the Board was too remote and could not adequately deal with the problems facing the hospital. On May 29, 1970, following mass resignations by doctors and nurses, the County Board agreed to relinquish direct financial control of the institution.

In June 1970, by Public Act 76-2015, effective July 1, 1970, the General Assembly amended the original statute. For convenience, P. A. 76-2015 will hereinafter be referred to as the "amending statute." The amending statute gave the Commission full management power by eliminating the line veto control of the County Board and substituting in its place the use of a consolidated budget, and lump-sum appropriations (Ill. Rev. Stat. 1971, ch. 34, par. 5023). The amending statute also statutorily enlarged the authority of the Commission over medical personnel at the Cook County Hospital below the level of superintendent of the Hospital.

In 1974, the plaintiff commenced suit solely against the County.

In March 1976, the County filed an amended answer which asserted as an affirmative defense that the responsibility and power to operate, maintain and manage Cook County Hospital at the time of the occurrence, had been placed in the Commission by the provisions of section 10 of the original statute. In May 1976, the County filed a motion for summary judgment and memorandum in support thereof, which again asserted that at the time of the occurrence the hospital was operated, maintained and managed by the Commission pursuant to section 10 of the original statute. Plaintiff filed a memorandum in opposition to the County's motion on June 1976.

On June 8, 1976, plaintiff filed an amended complaint, adding the Commission as a party defendant.

On June 15, 1976, the trial court entered an order dismissing the

amended complaint as to the County. This order contained a Rule 304 finding that it was final and that there was no just reason for delaying enforcement or appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

On July 2, 1976, the Commission filed its answer, asserting as an affirmative defense that it was not subject to suit and was not responsible for the artions of medical personnel at Cook County Hospital taking place before July 1, 1970, the effective date of the amending statute.

On August 6, 1976, the plaintiff moved to vacate the summary judgment of June 15, 1976, in favor of the County, and to strike the affirmative defenses alleged in the answer of the Commission. This motion was supplemented, on August 24, 1976, by a motion to vacate the summary judgment specifically predicated upon section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72), and supported by the affidavit of one of plaintiff's counsel. Both parties filed memorandums in support of their positions.

Subsequently, the Commission filed a motion that it be dismissed as a party defendant, and a memorandum in support thereof. Essentially, its position was that "although the Commission in 1969 had paper power to operate and manage Cook County Hospital, this power was meaningless in light of the County Board's line veto fiscal control of every budgetary item and job. This was changed by the amendments to the Act which became effective July 1, 1970."

On September 13, 1976, the trial court granted the plaintiff's motion to vacate the summary judgment order of June 15, 1976, and reinstated the County as a defendant. In the same order, the court granted the defendant Commission's motion to dismiss. This order is the basis for both the appeal by the defendant, County, and the cross-appeal by the plaintiff.

OPINION

■■ The purpose of a section 72 motion is to enable a party to bring before the court rendering judgment matters of fact not appearing in the record, which, if known to the court at the time judgment was entered, would have prevented its rendition. (*McKnelly v. McKnelly* (5th Dist. 1976), 38 Ill. App. 3d 637, 348 N.E.2d 500.) The burden is on the petitioner seeking relief from judgment to allege and prove facts justifying relief. *Fennema v. Vander* (1969), 42 Ill. 2d 309, 247 N.E.2d 409.

■■ The defendant County contends that plaintiff's section 72 motion was deficient as it was not based on any errors of fact which caused the trial court to enter its final order. An examination of plaintiff's section 72 motion and affidavit support the County's argument. The only error of fact on which plaintiff bases her request for relief is the following

conclusory statement contained in the affidavit: "That there was a material misrepresentation of fact in this matter to the Court and to the counsel for the plaintiff." There is no supporting allegation of fact as to what this alleged misrepresentation was. There are no allegations as to who made the misrepresentation. Furthermore, there is no allegation that the court relied on or even considered this misrepresentation when it dismissed the County as a defendant. In the absence of any pleaded facts which constitute the alleged misrepresentation, the allegation is a conclusion and the section 72 motion is insufficient on its face. *Smythe v. Smythe* (2d Dist. 1961), 28 Ill. App. 2d 422, 171 N.E.2d 649.

In addition to its technical deficiencies, the motion does not actually raise any new factual matters. The issue upon which plaintiff bases her purported "misrepresentation of fact," to wit, who was in control of Cook County Hospital in November 1969, for the purpose of being liable for negligent acts of the hospital staff, was argued and decided in the trial court as a legal issue. There is no evidence in the record that the County misrepresented its function at Cook County Hospital. The sole basis of the County's motion for summary judgment in the trial court was the County's contention that, based on the provisions of the original and amending statutes, the County was no longer liable for acts of negligence occurring after 1969, the date the Commission was created. Plaintiff filed a memorandum in opposition to the County's motion and the trial court heard arguments from both parties prior to entering its dismissal order on June 15, 1976. For the trial court to have dismissed the County, it must have found that the County was not liable, as a matter of law, for acts of the hospital staff in November 1969.

■■ If plaintiff disagreed with the trial court's ruling, she had two options available to her within prescribed time limitations. She could have filed a motion in the trial court within 30 days to set aside the final order (Ill. Rev. Stat. 1975, ch. 110, par. 50(5)), or she could have appealed to this court (Ill. Rev. Stat. 1975, ch. 110A, pars. 301, 304). Instead, plaintiff did nothing and lost her options. On August 24, 1976, more than 60 days after the entry of the dismissal order, she filed her section 72 motion and affidavit in support thereof. Section 72 is not intended to provide a review of an order from which a party could have appealed within the time fixed by rule, and the provisions of section 72 cannot be invoked as a substitute for a party's right to appeal. *Dowling v. Baker* (1st Dist. 1975), 29 Ill. App. 3d 832, 331 N.E.2d 320.

The trial court's order of September 13, 1976, vacating the dismissal of the County as a defendant constituted an improper and untimely review of the trial court's own final order. A motion under section 72 cannot be used to again put in issue questions previously adjudicated by valid

means. (*Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25.) Accordingly that part of the order vacating the dismissal of plaintiff's complaint as to defendant County is reversed.

In her cross-appeal, plaintiff argues that during the period between July 1, 1969, the effective date of the original statute, and July 1, 1970, the effective date of the amending statute, it is a question of fact whether the defendant Commission was in sufficient control of the Cook County Hospital and its personnel, so as to be responsible, under the principles of *respondeat superior,* for injuries resulting from medical malpractice by the hospital staff. Plaintiff argues further that this question cannot be determined as a matter of law solely from an examination of the original and amending statutes, and that the trial court erred by dismissing the Commission as a defendant. We agree.

■■ The question as to whether or not the relationshi of master and servant exists is dependent upon certain facts and circumstances. These facts include the question of the hiring, the right to discharge, the manner of direction of the servant, the right to terminate the relationship, and the character of the supervision of the work done. Unless these facts clearly appear, the relationship cannot become purely a question of law. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665.

The original statute provided that the Commission "shall have the general responsibility of organizing, operating, maintaining and managing the various hospitals and hospital facilities owned by any such county and the hospital, medical, nursing, health and allied medical programs related thereto. It shall have the power to operate, maintain and manage such hospitals, facilities and programs, to make and enter into contracts therefore, and to establish rules and regulations for use, operation and management thereof" (Ill. Rev. Stat. 1969, ch. 34, par. 5020); that the Commission "shall appoint an Executive Director of the Commission who shall serve at the pleasure of the Commission. The Executive Director shall recommend to the Commission for their approval such professional staff as he considers necessary to assist him in carrying out his duties" (Ill. Rev. Stat. 1969, ch. 34, par. 5019); and that the Commission "may appoint such chief administrative officers as it determines are necessary who shall serve at the pleasure of the Commission for the Hospitals which are operated by such county. In addition the Commission shall appoint such administrators, medical directors and other executive and administrative employees as it determines are necessary." Ill. Rev. Stat. 1969, ch. 34, par. 5021.

Despite this broad statutory grant of authority, the Commission argued in the trial court that it had no actual authority, independent of the County Board, to appoint medical staff or employees at Cook County

Hospital who were directly involved in the rendering of medical services to patients. These individuals were County employees whose jobs were reflected on the line budget and payroll, subject to approval by the County Board. Therefore, defendant argues, the trial court was correct in deciding that under the original statute, the Commission could not be held liable for the negligence of these individuals.

We believe that the Commission raised a mixed question of law and fact, and we are unable to affirm the trial court on the record before us. Who, for instance, exercised the actual power of hiring and firing medical personnel and other employees at the hospital, as contrasted with the statutory power of approval over budgetary items? Who directed the day-to-day activities of the medical staff? Who assigned particular employees to particular jobs? These are just a few of the unanswered questions of fact that militate against a finding in favor of the Commission, as a matter of law. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665.

We believe that the Commission has misread our opinion in *Hoffman v. Wilkins* (1st Dist. 1971), 132 Ill. App. 2d 810, 270 N.E.2d 594. That case involved an attempt by the Commission to discharge one of the medical directors at Cook County Hospital. In affirming the grant of a preliminary injunction enjoining the Commission from dismissing the director, we said: "the authority of the Governing Commission [under the original statute] to appoint subordinate administrators, medical directors and other executives cannot be read to imply the right of removal without following civil service procedures." (*Hoffman,* at 821.) The opinion did not state that the Commission could not effectuate the removal of medical personnel. The opinion was limited to a finding that this individual was within that group of persons entitled to protection under the civil service act for Cook County (Ill. Rev. Stat. 1969, ch. 34, par. 1116), and that these procedures must be followed in order to effectuate his removal.

The Commission next argues that it was not a legal entity in 1969, and was incapable of suing or being sued. This power was not added until the amending statute of 1970. (Ill. Rev. Stat. 1971, ch. 34, par. 5020.) Defendant contends that at best, the Commission was simply another department of County government in 1969.

■■ Clearly, the Commission was something more than a mere department of County government. The County had no voice in the creation of the Commission, which was accomplished by a State law, and officials of the County had only a minority (two-fifths) voice in the selection of the commissioners. (Ill. Rev. Stat. 1969, ch. 34, par. 5012.) In these respects, the Commission was more closely akin to a quasi municipal corporation, similar to the status of the board of education of

the City of Chicago between 1889 and 1917 (See *McGurn v. Board of Education* (1890), 133 Ill. 122, 24 N.E. 529; *Brenan v. People ex rel. Kraus* (1898), 176 Ill. 620, 52 N.E. 353.) As such, the Commission had the implicit power to sue or be sued that necessarily flows from the creation of an independent agency of government. (*City of Spring Valley v. Franckey* (1909), 150 Ill. App. 435. See also 10 Ill. L. & Prac. *Cities, Villages, & Other Municipal Corporations* §1661 (1955).) Furthermore, we note that the Commission has heretofore availed itself of this court during the period in which it now claims it had neither the power to sue or be sued. *Hoffman v. Wilkins* (1st Dist. 1971), 132 Ill. App. 2d 810, 270 N.E.2d 594.

Finally, the Commission argues that under the amending statute, the Commission is not permitted to pay judgments subsequently rendered on claims arising out of acts committed by the hospital staff prior to July 1, 1970. The relevant section reads as follows:

> "Judgments rendered against the Commission as agent for the county shall be payable solely from funds available to the Commission under Section 13 of this Act." (Ill. Rev. Stat. 1971, ch. 34, par. 5020.)

Defendant argues that this provision is clearly limited to claims arising after July 1, 1970, because prior to this time, judgments were payable out of the County tax levy and not the Commission's own funds. Furthermore, defendant argues that the Commission was not acting as the statutory agent of the County until after that date.

After examining the amending statute, we are unable to find any provision which specifically limits the application of the statute to judgments arising out of acts of medical malpractice occurring after July 1, 1970. Indeed, the provisions of section 13, putting the Commission on a "cash basis" system of accounting, would appear to support the view that the date the judgment is rendered, rather than the date of the occurrence, governs which judgments are to be paid solely from funds of the Commission. Ill. Rev. Stat. 1971, ch. 34, par. 5023.

The remaining element of this argument is the Commission's contention that it was not acting as "agent for the County" prior to July 1, 1970. However, the relationship of agency does not depend on an express appointment and acceptance, but it may be implied from the facts and circumstances of a particular case. As we stated earlier, this question presents a genuine issue of material fact and while the Commission may not have been the statutory agent of the County in 1969, it most certainly could have been the County's general agent.

Therefore, for the reasons aforesaid, that portion of the order vacating the dismissal of plaintiff's complaint as to defendant, County, is reversed, and the trial court is directed to reinstate the dismissal order; that portion of the order dismissing the Commission as a defendant is also reversed,

and this cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and DOWNING, J., concur.