ST. ANN'S HOME FOR THE AGED, Plaintiff-Appellee, *v.*
JOSEPH J. DANIELS *et al.*, Defendants-Appellants.

First District (4th Division)    No. 80-553

Opinion filed April 9, 1981.—Rehearing denied May 21, 1981.

John Kevin Kneafsey, of Chicago, for appellants.

Gary M. Elden and Robert P. Wasson, Jr., both of Chicago (Reuben & Proctor, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Lucy Daniels, not a party to this proceeding, was cared for by the plaintiff, St. Ann's Home for the Aged (St. Ann's), from December 15, 1977, to April 25, 1980. The trial court entered judgment for $25,437.10 compensatory damages against the defendants, Joseph A. Daniels and Gina L. Daniels. The court issued an injunction requiring Gina Daniels to remove Lucy Daniels from St. Ann's. Judgment for $15,000 punitive damages was entered against Joseph A. Daniels. The basis of Gina Daniels' liability is that she signed a contract with St. Ann's. Joseph A. Daniels did not sign a contract. St. Ann's alleged that he was liable on the ground that his agent entered into an oral contract with St. Ann's on Joseph A. Daniels' behalf. St. Ann's also alleged liability on unjust enrichment and promissory estoppel grounds. Gina Daniels appeals contending (1) she is not liable for the cost of care and (2) the injunction should not have been entered because St. Ann's has an adequate remedy at law. Joseph A. Daniels appeals, contending that (1) agency, and thus his liability, was not properly established and (2) punitive damages are inappropriate as this is a contract action. The defendant Joseph J. Daniels was found to have no liability to St. Ann's. He is not a part of this appeal.

Joseph A. Daniels testified that in November or December of 1977, his 85-year-old mother, Lucy Daniels, collapsed in her apartment. He called Dr. Irwin Smith, neighbor and physician to the Daniels family, and asked the doctor to admit Lucy Daniels to the hospital. The doctor admitted Lucy Daniels to Glenbrook Hospital. Two or three weeks later, Dr. Smith called Joseph A. Daniels and told him that Lucy Daniels was recuperating and could no longer stay at the hospital. However, the doctor did not believe that Lucy Daniels should return to her apartment because Joseph A. Daniels' wife was ill and would therefore not be able to care for Lucy Daniels. The doctor told Joseph A. Daniels that he would insist that Lucy Daniels be placed in St. Ann's because he would not be responsible for Joseph A. Daniels' wife's health if she were to continue to

care for Lucy Daniels. The doctor stated that he could arrange to place the mother in St. Ann's. Joseph A. Daniels told Dr. Smith that if he thought that that was best then he should go ahead and make the arrangements to have Lucy Daniels placed in St. Ann's. Joseph A. Daniels then went out of town on a business trip. When he returned, his wife told him that Lucy Daniels had been admitted. He responded, "fine." He was very pleased to know that his mother was at the home. His wife told him that his daughter, Gina Daniels, was present when Lucy Daniels was admitted to St. Ann's.

Joseph A. Daniels testified that he believed his father, Joseph J. Daniels, would pay St. Ann's. He admitted that Joseph J. Daniels earned less than $750 annually and had no assets. Joseph A. Daniels contributed more than 75% of his parents' support.

St. Ann's hospital was in desperate financial need. Joseph A. Daniels had been informed of that fact.

At the time that Lucy Daniels was admitted to St. Ann's, Gina Daniels signed a document entitled "Agreement of Resident or Responsible Party." By this document Gina Daniels agreed to be responsible for physician's fees, medication expenses, the "basic rate" charged at the home, and for "all payments on room, board, medical care, nursing care, etc." charged to Lucy Daniels' account. Gina Daniels was not billed by St. Ann's.

■■ Gina Daniels' first argument is that she is not liable for the cost of the nursing care under the contract she signed. She advances no legal theory in support of this contention, but states only that St. Ann's did not rely upon her to be financially responsible for the care of Lucy Daniels. She claims that St. Ann's relied upon her father or grandfather and notes that she was never sent a bill. We do not believe these considerations are sufficient to obviate Gina Daniels' contractual liability. According to her own admission she read the "Agreement of Resident or Responsible Party" and signed it. Notwithstanding her allegations that St. Ann's did not intend to hold her liable and did not bill her, she is bound by that agreement.

■■ Gina Daniels next contends that the trial court erred in entering an injunction requiring her to remove Lucy Daniels from St. Ann's. The only basis asserted for reversing the injunction is that St. Ann's had an adequate remedy at law since it could have recovered damages for continuing to care for Lucy Daniels. We do not believe that this contention supports the reversal of the injunction. It could not be considered an adequate remedy at law to require St. Ann's to care for Lucy Daniels indefinitely while periodically suing for damages. We do not consider whether the injunction might have been defective on grounds not advanced. This issue is apparently moot because Lucy Daniels is no longer a resident at St. Ann's.

We have addressed the issue, however, because of Gina Daniels' contention that the issue is still in controversy on the ground that the Injunction Act provides a remedy to those enjoined by injunctions which are subsequently dissolved. Ill. Rev. Stat. 1979, ch. 69, par. 12.

Joseph A. Daniels' first argument is that the trial court erred in basing his liability upon a finding that Dr. Smith was his agent. His entire argument on this point consists of the assertion, without analysis or citation to authority, that there is no evidence in the record that Joseph A. Daniels represented to anyone that Dr. Smith was his agent or that Joseph A. Daniels appointed Dr. Smith as his agent for any purpose.

■■ The agency relationship does not depend on an express appointment and acceptance, but may be implied from facts and circumstances. (*Lilly v. County of Cook* (1978), 60 Ill. App. 3d 573, 377 N.E.2d 136.) The existence of an agency relationship may be established and its nature and extent shown by circumstantial evidence, and reference may be made to the situation of the parties, their acts, and other relevant circumstances. (*Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 373 N.E.2d 550; *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 334 N.E.2d 431.) A *prima facie* case of agency can be created by inference or presumption. (*Winston v. Sears, Roebuck & Co.* (1967), 88 Ill. App. 2d 358, 233 N.E.2d 95.) Unless the parties' relationship is so clear as to be undisputed, the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact. *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154.

■■ ■ By his own admission, Joseph A. Daniels told Dr. Smith, the Daniels' neighbor and physician, to go ahead and make the arrangements to have Lucy Daniels placed in St. Ann's. Joseph A. Daniels then went out of town on a business trip. It is undisputed that Dr. Smith then made the arrangements for Lucy Daniels to be admitted. That Joseph A. Daniels responded "fine" and was, by his own testimony, very pleased when told of the admission is additional evidence that he intended an agency relationship at the time that he spoke to Dr. Smith. It is not necessary that Joseph A. Daniels expressly told Dr. Smith that he would be responsible for the costs of Lucy's care at St. Ann's. A principal is bound not only for the precise act which he expressly authorized the agent to do, but also for whatever belongs to the doing of it or is necessary to its performance. (*Marohn v. Burnham Van Services, Inc.* (N.D. Ill. 1979), 478 F. Supp. 49; *Roscoe Co. v. Lewis University, College of Law* (1979), 79 Ill. App. 3d 1098, 398 N.E.2d 1083.) Therefore, we do not believe it was against the manifest weight of the evidence for the trial court to conclude that Joseph A. Daniels appointed Dr. Smith as his agent for the purpose of admitting Lucy Daniels to St. Ann's.

Joseph A. Daniels also argues that the trial court erred in allowing a

St. Ann's administrator to testify as to statements allegedly made by Dr. Smith. St. Ann's contends that the statements were admissible as the admissions of the agent of a party. Joseph A. Daniels contends that the statements were inadmissible hearsay because there is no evidence in the record that Dr. Smith was his agent. His argument is foreclosed by our conclusion that there was sufficient evidence in the record to support the trial court's determination that Joseph A. Daniels appointed Dr. Smith as his agent for the purpose of admitting Lucy Daniels to St. Ann's.

Joseph A. Daniels' final argument on appeal is that the trial court erred in entering judgment for punitive damages against him. St. Ann's contends that punitive damages were appropriate in this case because Joseph A. Daniels was guilty of fraud by entering into a contract with no intent to perform, guilty of intentional conversion of services, and guilty of inducing his lawyer to violate the disciplinary rules.

■■ Generally, punitive damages are not recoverable in actions for breach of contract. (*Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 377 N.E.2d 161; *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75; *Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 284 N.E.2d 509.) The general rule does not apply in those exceptional cases where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression. (*Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) It is not so much the tort committed as the motive and conduct in committing it that is the basis of awarding punitive damages. While Joseph A. Daniels'' breach caused a hardship to St. Ann's and he knew that the home was in great financial need, we do not believe his conduct can properly be characterized as wanton, malicious, or oppressive. Accordingly, that portion of the judgment awarding punitive damages is reversed.

For the foregoing reasons the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part.

Reversed in part.

JOHNSON and LINN, JJ., concur.